924 A.2d 1105

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Robin K.A. FICKER.**

**Misc. AG No. 26 Sept. Term, 2006.**

Court of Appeals of Maryland.

June 7, 2007.

Raymond A. Hein, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n of Md.), for Petitioner.

Stanley J. Reed, Bethesda, MD, for Respondent.

Argued Before RAKER, CATHELL, HARRELL, GREENE, JOHN C. ELDRIDGE (Retired, specially assigned), ALAN M. WILNER (Retired, specially assigned) and THEODORE G. BLOOM (Retired, specially assigned), JJ.

ALAN M. WILNER, Judge (retired specially assigned).

Robin K.A. Ficker, who was admitted to the Maryland Bar in 1973, maintains a high volume practice concentrating on criminal, drunk driving, and other motor vehicle violation matters in the District Court, primarily in the central Maryland area. This is the fifth time he has been charged with violations of the Maryland Rules of Professional Conduct (MRPC), mostly emanating from carelessness in the running of his office—carelessness that has resulted in failures on his part or on the part of lawyers he was responsible for supervising to appear in court or otherwise properly attend to client matters.[1] In the last of his cases to reach us, we observed that Ficker "was running a high-volume operation without adequate managerial safeguards and that, as a result, clients were not afforded competent representation." *Attorney Griev. Comm. v. Ficker,* 349 Md. 13, 43, 706 A.2d 1045, 1059 (1998). It is estimated that he now handles between 1,000 and 1,500 cases a year.

---

1. In 1990, Ficker was publicly reprimanded by us upon a finding that he had violated ethical rules prohibiting neglect, conduct prejudicial to the administration of justice, and lack of diligence. *See Attorney Griev. Comm'n v. Ficker,* 319 Md. 305, 572 A.2d 501 (1990). In March, 1998, upon a finding that the sloppy manner in which he operated his office had resulted in further violations of MCPR 1.1 (Competence), 1.3 (Diligence), 3.4 (Fairness to opposing counsel and parties), 5.1 (supervising lawyers), and 8.4(d) (Conduct prejudicial to the administration of Justice), he was indefinitely suspended, with the right to reapply for admission after 120 days. *See Attorney Griev. Comm. v. Ficker,* 349 Md. 13, 706 A.2d 1045 (1998). In August, 1998, he was privately reprimanded by the Attorney Grievance Commission for violation of MRPC 1.1 (Competence). In January, 2002, he was privately reprimanded by the Attorney Grievance Commission for violation of MRPC 1.4 (Communication with client).

This proceeding arises from similar kinds of complaints with respect to three clients—Ms. Robertshaw, Ms. Paulk, and Mr. Ponto. Upon the filing of Bar Counsel's Petition for Disciplinary or Remedial Action and in accordance with Maryland Rule 16–752(a), we designated Judge John Debelius, of the Circuit Court for Montgomery County, to conduct a hearing in the matter and to present to us his findings of fact and conclusions of law. Upon the evidence presented, some in the form of a stipulation, Judge Debelius found the following facts and conclusions of law.

### *General*

Ficker has operated a law practice in Montgomery County for more than twenty years. Although he has regularly employed associate attorneys to assist him, "his practice operates under his name alone, as 'The Law Offices of Robin Ficker' " and Ficker "is the sole principal of the firm and is responsible for supervising the activities of the associate attorneys and non-lawyer assistants employed by the firm."

### *Robertshaw*

■ Responding to a mailed solicitation from Ficker, Ms. Robertshaw, on April 18, 2005, retained Ficker to represent her in connection with a charge of driving under the influence of alcohol and several associated traffic offenses, including an open container violation. The agreed fee was $599. Along with a signed retainer agreement and a credit card authorization for $300, as a deposit on the fee, Ms. Robertshaw sent two trial notices to Ficker—one showing a trial date of June 2, 2005 at 8:45 a.m. in the District Court in Glen Burnie for the DUI offense, and the other showing trial on the other charges on June 9, 2005 at 1:15 p.m., also in the Glen Burnie court. Immediately upon receipt of those documents, Ficker mailed to the clerk of the District Court in Glen Burnie his appearance and a motion to consolidate the two cases. The motion was granted, but, for whatever reason, a copy of the order granting the consolidation never reached Ficker's office, so his

records continued to show two trial dates, one June 2 and one June 9.

Robertshaw knew that Ficker would attempt to consolidate the two cases, and she awaited word from him as to when she would need to appear. She called several times and left voice-mail messages; those calls were not returned. On one occasion, she reached Ficker, who said he was in his car, did not have her file with him, and that, when he got the information, he would advise her. Robertshaw received no further information from Ficker or his office until June 8, when she received a call from Mark Kosko, an associate attorney in Ficker's office.

Kosko was one of two associates in Ficker's office. There was no assignment system in the office under which cases were assigned when the file was opened. Rather, Kosko would review the firm's master calendar and assign to himself the cases he said he "could handle," which would usually take place about two weeks before the scheduled trial date.[2] Kosko reviewed Robertshaw's file during the last week of May. He was scheduled to go on vacation for a week, commencing May 30, 2005, and thus knew that he would be unavailable for the trial scheduled for June 2. He instructed the "office staff" to "check on the June 2nd trial date" but was unsure whether that had occurred before he left for vacation. Kosko returned to work on June 6, and, at some point, determined that a trial remained scheduled for June 9. The call to Ms. Robertshaw on June 8 was the first and only communication with the client. In that conversation, according to Kosko, Ms. Robershaw advised him of only one relevant prior conviction.

Although, in response to discovery, the State's Attorney's Office had informed Ficker by letter that Robertshaw had two prior alcohol-related convictions and that letter was in the file, Kosko, assuming that the letter was "a boilerplate cover letter" failed to read the entire letter and thus was unaware of

---

2. Kosko stated that he usually handled cases set for trial in Anne Arundel County or on the Eastern Shore.

the two convictions. He was prepared to try the case or negotiate a plea agreement in the belief that his client had only one prior conviction. When he learned about the second conviction from the prosecutor on the afternoon of trial, he negotiated a plea deal, without discussing the matter with Ms. Robertshaw, under which she would plead guilty to driving while impaired as a subsequent offender, and the State would dismiss the remaining charges. That arrangement would likely result in jail time for Ms. Robertshaw.

Kosko then located Robertshaw in the lobby and told her of the State's offer. This was the first meeting they had. They had not previously discussed the prospect of jail time. Ms. Robertshaw was upset at the prospect, and she "waffled" on whether she wanted to serve the time on consecutive days or over weekends. Ultimately, she was sentenced to ten days in jail, to be served over five weekends.

Upon these findings, Judge Debelius concluded that Ficker had shown "a complete absence of thoroughness and preparation" in his representation of Ms. Robertshaw, which amounted to a violation of MRPC 1.1 (Competence). The judge found as well that, in failing to properly examine the discovery materials, which would have alerted him to the two prior convictions, and failing to prepare Robertshaw and communicate viable options to her in advance of trial, Ficker violated MRPC 1.3 (Diligence) and 1.4 (Communication with client). Judge Debelius noted that there was "a complete absence of communication" between Ficker and Robertshaw between April 20 and June 8, despite her numerous attempts to contact him. Finally, the judge concluded that Ficker had violated MRPC 5.1 by "failing to have in place a system whereby cases were immediately assigned to a particular attorney within his office when the cases first came in, and instead, allowing particular attorneys to assign themselves cases two weeks prior to trial. . . ." That practice, the judge added, "fostered an environment where rules regarding diligent representation and communication with clients were almost inherently violated" and was especially egregious in light of the fact that, as a condition to Ficker's reinstatement in 1998, this Court re-

quired that he ensure that "cases are assigned in a reasonable and timely manner to allow the attorney assigned to do adequate preparation . . . ."

### *Ms. Paulk*

██ Ms. Paulk was charged with stalking, telephone misuse, and harassment. On March 29, 2005, she signed a retainer agreement to have Ficker represent her with respect to those charges. The agreement called for a fee of $599, but no payment was made at that time. Paulk made an initial payment of $200 on June 18, and two days later, Ficker entered his appearance. Trial of the case had initially been set in the District Court in Hyattsville, Prince George's County, for May 18, but, at the State's request, it had been postponed to June 30. On May 6, the State sought and received another postponement, but, because, at the time, no appearance had been entered for the defendant, the case remained on the docket for June 30, in order to advise Ms. Paulk of her right to counsel. On June 28, Ms. Paulk paid the balance of the fee.

Ficker had been on notice of the June 30 trial date and believed that would be the trial date. Nonetheless, neither he nor any associate from his office appeared on that day when Ms. Paulk's case was called. When Ms. Paulk, who *was* present, realized that Ficker was not there, she contacted him on his cell phone and was told that there must have been a "misunderstanding" as "her case had not been entered on the firm's trial calendar." She was advised to seek a postponement, which apparently was granted. Ficker continued to represent her, and, in January, 2006, the case was *nol prossed.* The judge presiding on June 30 complained to Bar Counsel about Ficker's non-appearance.

On these facts, Judge Debelius found a violation of MRPC 1.3 (Diligence) and 8.4(d) (Conduct prejudicial to the administration of Justice), but not 5.3 (Supervision of non-lawyer assistants). With respect to MRPC 1.3, the judge concluded that Ficker's "lack of awareness of Paulk's June 30th court

date due to the date not appearing on his firm's trial calendar, despite his two meetings with Paulk within two weeks of her court date and despite his listing the June 30th date on his Line of Appearance supports this court's finding that [Ficker] represented Paulk in a non-diligent manner." The MRPC 8.4(d) violation was based on a statement we made in *Attorney Griev. Comm. v. Ficker, supra,* 319 Md. at 315, 572 A.2d at 506, that "[if] being later for a scheduled court appearance interferes with the administration of justice, it is obvious that being altogether absent from a scheduled trial does so as well."

### *Mr. Ponto*

■ Mr. Ponto, a Canadian citizen who lives in Edmonton, Alberta, was arrested in Baltimore County on January 25, 2005, and charged with driving under the influence of alcohol. Trial was scheduled in District Court in Towson for February 22, 2005. Responding to a mailed solicitation from Ficker, Ponto contacted Ficker on February 14 about possible representation and informed him that he (Ponto) would be unable to attend court in Maryland on February 22. There is some dispute whether Ficker assured Ponto that he would have no difficulty obtaining a continuance or simply said that he would ask for one. It is clear, however, that neither Ficker nor any associate in his office would have been available to appear in court on February 22. On February 16, Ponto retained Ficker by making a credit card payment in the amount of $799, and, that same day, Ficker forwarded by Federal Express a line of appearance and a motion for continuance to the clerk of the District Court in Towson. The next day, February 17, Ficker was advised by the clerk that the motion for continuance had been denied.

Ficker immediately sent an e-mail to Ponto informing him of the denial and advising that Ponto had to be in court on the 22nd or face the prospect that a warrant would be issued for his arrest. Ficker also asked one of his former associates, Jason Kobin, who then practiced in Baltimore County, to go to court on the 22nd and seek reconsideration of the order

denying the requested continuance. An associate of Mr. Kobin did appear and make the request, but it was denied, and a warrant was issued for Ponto. In July, 2005, Ponto retained other counsel. The warrant eventually was quashed, Mr. Ponto was found guilty of a related offense, and he was fined and placed on probation.

Judge Debelius noted that, when Ficker was first contacted on February 14, and when he accepted the fee and entered his appearance on February 16, he knew that neither he nor any of his associates were available to appear on February 22. The judge rejected Ficker's excuse that he thought that other attorneys, such as Mr. Kobin, with whom he had no association, might be able to appear: "[Ficker] was not associated with any of these attorneys, nor did Ponto hire any of these attorneys to represent him, nor did [Ficker] notify Ponto that one of these attorneys would be representing his interests."

Ficker stated that he later learned that his motion for continuance was denied because he had failed to attach to it documents that would verify that he had conflicting court appearances, which the judges of the District Court in Towson apparently require.[3] Judge Debelius observed that Ficker

---

3. We need not consider here whether such a generic requirement, if it exists, would constitute an impermissible local rule. The rules governing priorities when conflicts exist in trial court assignments have, since 1978, been set forth in an Administrative Order of the Chief Judge of the Court of Appeals. With some exceptions not relevant here, the general rule is that, where a conflict exists, priority is governed by when the conflicting assignments were made, *i.e.*, if on March 1, Case A is set for trial at 10:00 on May 1 and on March 3, Case B is set for trial at 10:00 on May 1, Case A will have priority. Paragraph 2.b. of the current (1995) Administrative Order expressly warns that "[i]f counsel accepts employment in a case in which a date or time for argument, hearing, or trial has already been set after counsel has been notified of a conflicting assignment for the same date or time, counsel should not expect to be granted a continuance."

Under this construct, it is not at all impermissible for a judge, when asked to postpone a case already set for hearing because counsel has a conflicting court date, to require some evidence as to when the conflicting court date was established and when counsel entered his or her appearance in the case at hand, for if (1) the conflicting date was not established before the date on which a hearing in the case at hand was

had failed to mention in his motion for continuance his client's business obligations in Western Canada that would render him unable to appear on February 22. The judge also noted that the entire $799 received by Ficker had been placed in the firm's operating account, notwithstanding Ficker's knowledge that he had not yet earned that fee.

On these facts, Judge Debelius found that Ficker had violated MRPC 1.15(a) by not placing the unearned $799 fee in a separate escrow account, and that, by entering his appearance to represent Ponto, knowing that he would be unable to do so on February 22, Ficker violated MRPC 8.4(d) (Conduct prejudicial to administration of Justice). He was not persuaded that Ficker had violated MRPC 1.1 by failing to familiarize himself with the requirement imposed in the District Court in Baltimore County that motions for continuance based on a lawyer's conflict contain documentation of the conflict.

Bar Counsel filed an exception challenging Judge Debelius's failure to find a violation of MRPC 1.1 in the Ponto case. Ficker has taken exception to most of Judge Debelius's rulings: (1) the violation of MRPC 8.4(d) in the Ponto case; (2) the violations of MRPC 1.3 and 8.4(d) in the Paulk case, and (3) the violation of Rules 1.1, 1.3, and 5.1, in the Robertshaw case. He concedes violation of Rule 1.4 in the Robertshaw

---

scheduled. and (2) counsel entered his appearance in the case at hand on or after the hearing date in that case was established and thus with knowledge of the conflict, the request should ordinarily be denied. Ficker knew when he entered his appearance in the Ponto case that, because of existing conflicts, neither he nor anyone from his office would be able to attend trial on February 22nd. He is charged with knowing that, unless he could satisfy the judge in Baltimore County that the February 22nd trial date in Ponto's case would not take precedence under the priority rules established by the Chief Judge, his motion for continuance would likely be denied. Although Ficker claimed to be unaware that the judges in Baltimore County require that the motion for continuance contain some documentation, there is no evidence in this record that (1) the conflicting dates alleged by Ficker were established before the February 22nd trial date was set in the Ponto case, or (2) even if they were, Ficker did anything to advise the judge in Baltimore County of that fact.

case but argues that he has since instituted corrective measures.

We shall overrule all of the exceptions. The factual findings by Judge Debelius are all supported by substantial competent evidence, and we find no error of law in any of them. As we observed initially, this is the fifth time that Ficker has run afoul of his obligation to manage his office in a proper manner. He was warned twice by this Court, in 1990 and in 1998, and, despite his claimed improvements, seems not to have learned enough from those warnings. As the result of his cavalier attention to proper office management (1) one client (Robertshaw), facing incarceration, was virtually abandoned until the eve of trial and then was represented by an associate who had not read the entire file, who was unaware that his client had two prior convictions, and who first presented the available options to her in the lobby of the courthouse on the day of trial, (2) another client (Paulk), facing criminal charges that could have resulted in incarceration, was abandoned on what she assumed would be a trial date and which, only by fortuitous circumstance unknown to her or Ficker, had been limited to an advice of rights proceeding, and (3) a third client (Ponto) ended up having an arrest warrant issued against him.

We see in these violations an inexcusable lack of concern on Ficker's part for the welfare of his clients, an unwillingness, after four warnings, to make the necessary improvements to his office management. Accordingly, we believe that the appropriate sanction is an indefinite suspension from the practice of law, with the right to reapply for admission no earlier than one year from the effective date of the suspension. Pursuant to Md. Rule 16–760(a), "to allow . . . a reasonable opportunity to comply," the suspension shall commence 30 days after the filing of this Opinion, except that Ficker shall accept no new clients and undertake no new work for existing clients as of the date of this Order. Although we are not inclined, at this point, to set other conditions on an application for reinstatement that cannot be filed for at least a year, we suggest that, should Ficker seek reinstatement, he be

prepared to demonstrate that he will have in place specific and reliable systems and procedures necessary to ensure that the problems that have plagued his practice for the past seventeen years do not recur.

IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST ROBIN K.A. FICKER; SUSPENSION SHALL COMMENCE 30 DAYS AFTER THE FILING OF THIS OPINION.

CATHELL, J., files a concurring and dissenting opinion.

Concurring and Dissenting Opinion by CATHELL, Judge.

I concur with the findings of the majority. I dissent, however, from the imposition of the sanction imposed by the majority, i.e., an indefinite suspension with the right to reapply after one year. As the majority succinctly points out, respondent has been sanctioned previously for similar negligence, incompetence, and lack of diligence on four separate occasions.

In the present case, arising itself out of three different complaints, the hearing judge found, and the majority concurs, that he exhibited incompetence, lack of diligence, and failure to communicate with his client in the *Robertshaw* matter; lack of diligence and conduct prejudicial to the administration of justice in the *Paulk* matter; and that respondent had failed to place an unearned fee in a separate escrow account, had committed conduct prejudicial to the administration of justice in the *Ponto* case.

If disbarment is not warranted in this case for these types of issues, with a respondent with this history, it will never be warranted. If it is never going to be warranted in these types of cases, we should modify the rules to say so. I would disbar.