935 A.2d 409

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

**Peter R. MAIGNAN.**

**Misc. AG Nos. 13 Sept. Term, 2006, 64 Sept. Term, 2006.**

Court of Appeals of Maryland.

Nov. 8, 2007.

40

Glenn M. Grossman, Deputy Bar Counsel (Melvin Hirshman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

William C. Brennan, Jr. (Brennan, Sullivan & McKenna, LLP), Greenbelt, for respondent.

Argued before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, Specially Assigned) and DALE R. CATHELL, (Retired, Specially Assigned), JJ.

ALAN M. WILNER, Judge, (Retired, Specially Assigned).

Before us are two petitions for disciplinary or remedial action filed by Bar Counsel, on behalf of the Attorney Grievance Commission, against respondent, Peter Richard Maignan. Although the petitions were filed separately, involve different matters, and were referred to different judges for hearing, upon receipt of the findings and conclusions of the hearing judges, we consolidated the petitions and shall deal with them in this one Opinion. As a backdrop, we note that Maignan is currently on an indefinite suspension as the result of a trust account violation. *See Attorney Grievance v. Maignan,* 390 Md. 287, 888 A.2d 344 (2005).

## NO. 13 (FULLER AND THOMAS)

The petition in No. 13, which involves complaints by Morris Fuller and Monica and Benny Thomas, was filed in May, 2006.[1] In accordance with Maryland Rule 16–752, we referred the petition to Judge Dwight D. Jackson, of the Circuit Court for Prince George's County, who conducted a hearing in October, 2006, and presented us his findings of fact and conclusions of law. Unfortunately, the testimony of Monica Thomas was not recorded, and, on Bar Counsel's motion, we remanded the petition to Judge Jackson, who conducted a

---

1. The petition in No. 13 included a third complaint, initiated by Bar Counsel. That complaint was subsequently abandoned.

further evidentiary hearing in June, 2007, and filed a revised statement of his findings and conclusions.

### Morris Fuller

Bar Counsel's petition with respect to Fuller alleges that, in December, 2003, Morris Fuller retained Maignan and his firm to collect a $28,502 judgment that Fuller had obtained against Bryant Enterprises, Inc., a defunct corporation. Fuller paid Maignan an initial retainer of $2,000 and made a subsequent payment of $2,700. Bar Counsel averred that Maignan charged an unreasonable fee, including a charge of $62 for preparing the retainer agreement, that he or his associate filed frivolous motions and defective pleadings, that he failed to supervise lawyer and non-lawyer employees, and that he failed to return unearned fees to Fuller.

On those allegations, Bar Counsel charged Maignan with violations of Maryland Rules of Professional Conduct (MRPC) 1.1 (Competent representation), 1.3 (Diligence), 1.5(a) (Reasonable fee), 1.16(d) (Refund unearned fees), 3.1 (Frivolous proceeding), 5.1 (Assuring professional conduct by lawyer-employees), 5.3(a) and (c) (Assuring professional conduct by non-lawyer employees), 8.4(a) (Violating other MRPC), and 8.4(d) (Conduct prejudicial to administration of justice).

After hearing evidence, Judge Jackson found that Bar Counsel had failed to prove any of the charges. He noted that Fuller had the assistance of another attorney in obtaining the judgment and that the other attorney, prior to her dismissal, had filed and served on the debtor interrogatories in aid of execution. When the interrogatories were not answered, Maignan filed a motion for contempt and for a writ of execution. The motion for contempt was never ruled on; the writ of execution was denied. At some point thereafter, Fuller and John Bryant, a principal in the defunct corporation, agreed to settle the judgment for $10,000.[2] A note evidencing that debt was prepared by someone, Bryant made an advance payment

---

**2.** Evidence was presented that Fuller had already received a payment of $7,500 on the judgment.

of $3,500, and Maignan was instructed by Fuller to draft an agreement memorializing the settlement. At a meeting held in Maignan's office on April 10, 2004, Bryant tendered a check for the $6,500 balance, but Fuller declined to accept the money, repudiated the settlement, and told Maignan that he wanted full payment.

Maignan informed Fuller that he did not wish to represent him further, and he instructed an associate who had been working on the matter to cease doing any more work for Fuller. Despite that instruction and without Maignan's knowledge, the associate filed additional motions for oral examination, which were not granted. When Maignan learned of her conduct, he discharged her. Fuller was not charged for her work in connection with those motions. Bar Counsel has filed no exceptions to Judge Jackson's findings and conclusions in the Fuller matter, and, given the record before us, we shall dismiss that part of the petition.

### *Monica and Benny Thomas*

Bar Counsel alleged that Maignan had represented Monica and Benny Thomas in connection with a case in the Circuit Court for Prince George's County and that he agreed to represent the Thomases in an appeal to the Court of Special Appeals. Maignan was paid $110 and an appeal was noted in September, 2002. Maignan failed to file an Information Report, as required by Maryland Rule 8–205, however, and, on or about October 25, 2002, the appeal was dismissed. Bar Counsel contended that notice of the order of dismissal and the ultimate mandate were "forwarded" to Maignan and that Maignan failed to disclose the dismissal to the Thomases.

In July, 2003, according to Bar Counsel, Maignan advised Mr. Thomas that, to continue with the appeal, Thomas would have to pay $3,500 plus $1,000 on an outstanding balance. In August, 2003, the Thomases paid Maignan $3,000 to pursue the appeal. In October and November, a non-lawyer employee, Erica Gayle, prepared a brief to be filed in the appeal, for which the Thomases were charged $100/hour. On November 24, 2003, Maignan informed the Thomases that he was ceasing

work on the appeal because of their failure to tender payment on overdue invoices.

Complaining that Maignan had inappropriately charged the Thomases for work on an appeal that had already been dismissed, refused to refund the moneys paid by them, and failed to supervise Ms. Gayle, Bar Counsel charged Maignan with violations of MRPC 1.1 (Competent representation), 1.3 (Diligence), 1.4(a) and (b) (Keeping client informed), 1.5 (Reasonable fee), 1.16(d) (Returning unearned fee), 5.1 (Assuring professional conduct by lawyer-employees), 5.3 (Assuring professional conduct by nonlawyer employees), 8.4(a) (Violating other MRPC), 8.4(c) (Dishonest conduct), and 8.4(d) (Conduct prejudicial to administration of justice).

After hearing evidence from the Thomases and Maignan, Judge Jackson determined, as he had with respect to the Fuller complaint, that Bar Counsel had failed to prove any of the alleged violations. He found that, in March, 2002, the Thomases retained Maignan to represent them in a lawsuit pending in the Circuit Court for Prince George's County against Mercedes Benz Credit Corporation and other entities. In September, 2002, the action was dismissed, and Maignan, on behalf of the Thomases, filed a notice of appeal, for which he was paid or reimbursed $110. The retainer agreement that the parties had did not include the appeal, and, when Maignan advised that he would not continue with the appeal unless the balance then due him was paid, Ms. Thomas informed Maignan that the Thomases would be handling the appeal *pro se.* Judge Jackson made no finding as to when that conversation took place. Although neither of the Thomases was a lawyer, Ms. Thomas had worked in some capacity for the U.S. Department of Justice and one or both of them had litigated *pro se* in the past.

It appears that neither Maignan nor the Thomases ever filed an Information Report with the Court of Special Appeals, which is required in civil cases by Maryland Rule 8–205. As a result, the appellate court, on October 25, 2002, dismissed the appeal. The mandate reflecting that dismissal was issued a

month later, on November 25. Although Maignan's name appears on both the notice of dismissal and the mandate, Maignan denied receiving those documents, and Judge Jackson noted that "there was no evidence that the Respondent received the documents ..."[3] Maignan, it thus appears, was unaware at the time that the appeal had been dismissed.

In July, 2003, the Thomases advised Maignan that the appeal was ongoing and that their brief was due on September 1. Maignan agreed to prepare the brief if the Thomases paid (1) money owed for the Circuit Court case, (2) money owed for his representation of the Thomases' son in a different matter, and (3) a retainer for writing the appellate brief. In August, the Thomases paid Maignan $3,000, of which $1,000 was allocated to preparation of the brief, and advised that the time for filing the brief had been extended to December. Maignan testified that he prepared a brief, had it printed, and sent a copy to Mr. Thomas, but at some point noticed that it had no case number, and that, when he called the Clerk of the Court of Special Appeals to get the case number, he was informed that the appeal had been dismissed. He relayed that information to Ms. Thomas, who denied that the appeal had been dismissed. Maignan did no further work and billed nothing more than the $1,000 paid in August.

Upon these findings, Judge Jackson concluded that Maignan had never actually represented the Thomases in the appeal, and, for that reason, had not committed any of the violations alleged by Bar Counsel. He stated:

"An attorney has a duty to keep himself informed as to the status of a case, but in the instant case Respondent did not represent the Thomases on the appeal of the Mercedes Benz matter since they initially elected to pursue the appeal in proper person. The Respondent reasonably relied upon the representations of the Thomases that they were actively pursuing the appeal because he thought he was preparing an appellate brief due initially on September 1, 2003 and

---

3. At oral argument before us, Maignan's attorney, when questioned about this, indicated that Maignan had moved his office.

extended until December 2003. The Respondent believed he could rely upon the representations made by the Thomases since they were active litigators with a history of *pro se* filings. This Court recommends these charges be dismissed and no disciplinary violations found."

■  Bar Counsel excepts to Judge Jackson's failure to find any violations. He complains that the Judge "relied exclusively on the testimony of the Respondent and gave no credence to the testimony of Mr. and Mrs. Thomas nor to the documentary evidence presented." The short answer to Bar Counsel's complaint is that Judge Jackson had every right to make that kind of credibility determination. Paraphrasing what we said recently in *Attorney Grievance v. Guida,* 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006), we accept a hearing judge's findings of fact unless we determine that they are clearly erroneous, precisely because he or she is in the best position to assess the demeanor-based credibility of the witnesses.

■  Some of the evidence was in dispute—the stories told by Maignan and the Thomases differed in some respects. Judge Jackson had the opportunity to evaluate their credibility, and we have no occasion, on this record, to second-guess that evaluation. Judge Jackson could find that, although Maignan actually filed the notice of appeal, he properly relied on the Thomases' statement that they would thereafter handle the appeal *pro se,* that he never did receive notice of the dismissal, that, when asked and paid to do so, he prepared a brief, but that he ceased work when advised by the Court of Special Appeals that the appeal had been dismissed. Upon those findings, the judge could properly conclude that Bar Counsel had failed to prove, by clear and convincing evidence, the alleged violations. We shall therefore overrule Bar Counsel's exceptions and dismiss that aspect of the petition as well.

### NO. 64 (BAR COUNSEL AND CLARK)

The petition in No. 64 presented two complaints, one directly by Bar Counsel and one by Joann Clark. It was filed in January, 2007, and was referred to Judge Albert W. Northrop,

of the Circuit Court for Prince George's County, to conduct a hearing and present us with his findings of fact and conclusions of law.

## Bar Counsel's Complaint

On December 14, 2005, Maignan entered his appearance in the Circuit Court for Prince George's County on behalf of Mark Fleming, who was charged with burglary and other property offenses. A week later, on December 22, 2005, this Court entered an order indefinitely suspending Maignan from the practice of law. *See Attorney Grievance v. Maignan, supra,* 390 Md. 287, 888 A.2d 344. Bar Counsel alleged that, on December 30, Maignan appeared at a motions hearing in the Fleming case before Judge Richard Sothoron, that he represented to the judge that, despite his suspension, he was authorized to appear for Fleming on that date and falsely stated that he could continue his representation until January 13, 2006. On that averment, Bar Counsel charged Maignan with violating MRPC 3.3(a)(1) (Making false statement of fact to a tribunal), 5.5(a) (Unauthorized practice of law), 8.4(a) (Violating another MRPC), 8.4(c) (Conduct involving misrepresentation), and 8.4(d) (Conduct prejudicial to administration of justice). After a hearing, Judge Northrop found that, by his appearance on December 30, while suspended, and by representing to Judge Sothoron that his representation of Fleming could continue until January 13, Maignan had violated each of those Rules. Maignan has filed exceptions to all of those conclusions, except MRPC 8.4(a).

The principal evidence of what occurred before Judge Sothoron comes from the transcript of the December 30 proceeding, which was admitted into evidence, and from Maignan's testimony before Judge Northrop. Maignan testified that Judge Sothoron, obviously aware that Maignan had been suspended, convened a preliminary bench conference at which the suspension order was discussed. Maignan informed the judge that, based on his calculations, he had fifteen days "to wrap up certain matters that had to be wrapped up before the suspension would take into effect." The judge then asked

when that 15–day period would end, to which Maignan replied, either January 6 or 13. Maignan said that he had been on vacation when our suspension order was filed and did not learn of it until his return on December 27. He apparently believed that he had a 15–day grace period, commencing when he learned of the order on the 27th. Judge Sothoron then left the bench for a time, and, when he returned, told Maignan that he could proceed but would have to let the judge know when he would be withdrawing.

None of that is recorded in the transcript of the December 30 hearing. The transcript begins with a brief introductory statement by the judge, noting that Maignan had entered his appearance on December 14, that trial was scheduled for January 19, that the motions hearing was initially set for December 23 but had to be postponed to the 30th because the detention center had failed to transport Fleming to court. Judge Sothoron then asked whether the State was ready to proceed. Complaining that, given the short period of post-ponement—only a week with the intervening Christmas holi-day—the State had been unable to notify its witnesses of the new date, the State sought another postponement, to which Maignan objected.

The court granted the State's request and scheduled the matter for January 13, 2006. The judge asked if Maignan would be able to represent Fleming. Maignan replied, "If I can't, Your Honor, I will arrange." Judge Sothoron then advised Fleming that Maignan would *not* be able to represent him at trial on January 19, and that Fleming would need to find another lawyer. He then asked Maignan what the last day would be that he could represent Fleming, to which Maignan replied, "My understanding is the 13th." The court looked for a convenient date to hold an "attorney status inquiry," and, with Maignan's acquiescence, selected January 13. That concluded the hearing.

Bar Counsel's complaint and Judge Northrop's conclusions were based on the fact that our order of indefinite suspension took effect immediately upon entry of the order, on December

22, 2005, and that Maignan was not authorized to practice law thereafter. His appearance in court before Judge Sothoron on December 30 was therefore unlawful and his representation that he could continue to represent Fleming until January 13 was false. Maignan does not contest that his suspension took effect on December 22. He argues, however, that, under Maryland Rule 16–760(c), he had at least fifteen days from the date of that order to conclude current client matters, which allowed him to appear at the motions hearing on December 30. He acknowledges that, even under his reading of Rule 16–760(c)(3), the 15–day grace period, if applicable, would expire before January 13, but he urges that his assertion that he could continue to represent Fleming until the 13th was an innocent mistake, not a deliberate misrepresentation.

The issue here is governed by Maryland Rule 16–760, which deals with the effect of an order suspending or disbarring a lawyer. Rule 16–760, which took effect July 1, 2001, replaced former Rule 16–713. In relevant part, Rule 16–713 stated flatly that an attorney "may not practice law after entry of an order disbarring the attorney, placing the attorney on inactive status, or accepting the attorney's resignation or during the period the attorney, by order, is suspended." The Rule did not provide for either a delayed effect of a disbarment or suspension order or a post-order grace period during which the attorney could wind up his or her practice or act to protect existing clients.

Under Rule 16–713, the vast majority of suspension or disbarment orders entered by consent, or to implement reciprocal discipline to that imposed in other States took effect immediately, and they still do under Rule 16–760. *See,* for example, *Attorney Griev. Comm. v. Essrick,* 343 Md. 1, 680 A.2d 464 (1996); *Attorney Griev. Comm. v. Williams,* 348 Md. 362, 704 A.2d 420 (1998); *Attorney Griev. Comm'n v. Saul,* 337 Md. 258, 653 A.2d 430 (1995); *Attorney Grievance v. Richardson,* 350 Md. 354, 712 A.2d 525 (1998); *Attorney Grievance v. Evans,* 394 Md. 302, 905 A.2d 384 (2006); *Attorney Grievance v. Bakare,* 394 Md. 303, 905 A.2d 840 (2006). There were, however, cases in which suspension orders en-

tered by consent had a delayed effective date. *See Attorney Grievance v. Maier,* 351 Md. 654, 719 A.2d 978 (1998); *Attorney Grievance v. Leader,* 351 Md. 655, 719 A.2d 978 (1998); *Attorney Grievance v. Adams,* 350 Md. 746, 715 A.2d 213 (1998). Whether consent orders for suspension had a delay provision seemed to depend on what was agreed to by Bar Counsel and the attorney and not on any deliberative adjudication by the Court.

On the other hand, when a suspension or disbarment was non-consensual, involved a lawyer actually practicing in Maryland, and was accompanied by an Opinion of the Court, the Opinion often, though not always, provided for a 30–day delay in the order taking effect. *See,* for example, *Attorney Grievance v. Brennan,* 350 Md. 489, 502, 714 A.2d 157, 163 (1998); *Attorney Grievance v. Ober,* 350 Md. 616, 632, 714 A.2d 856, 864 (1998); *Attorney Grievance v. Post,* 350 Md. 85, 101, 710 A.2d 935, 943 (1998); *Attorney Grievance v. Cohen,* 361 Md. 161, 179, 760 A.2d 706, 716 (2000); but *compare Attorney Griev. Comm. v. Milliken,* 348 Md. 486, 704 A.2d 1225 (1998); *Attorney Grievance v. Middleton,* 360 Md. 34, 756 A.2d 565 (2000).

In its 144th Report to the Court, filed in March, 1999, the Court's Standing Committee on Rules of Practice and Procedure recommended a substantial revision in the Rules governing the disciplining of lawyers for ethical violations. *See* 26:9 Md. Register 677 *et seq.* (April 23, 1999). Proposed Rule 16–770, intended to supplant Rule 16–713, attempted to address some of the implementation issues arising from an order of suspension or disbarment—issues not addressed in Rule 16–713 but sometimes dealt with in the individual orders entered by the Court. Section (a) of the proposed Rule provided that an order disbarring or suspending a lawyer "may provide that the order shall become effective immediately or on an effective date stated in the order" and that "[i]f no effective date is stated, the order shall take effect 30 days after the date of the order." That provision, the Reporter's Note advised, was modeled after Rule 27E of the ABA Model Rules for Lawyer Disciplinary Enforcement and was intended to provide "a

transition period to enable the disciplined attorney to wind down his or her practice, give notices, transfer files, and perform the other duties imposed by section (c)." *See* 26:9 Md. Register, at 708.[4]

Section (c) listed various duties that a suspended or disbarred lawyer would be required to perform. In part, that section was derived from ABA Model Rule 27F and G; in part, it iterated things that this Court had occasionally required in individual suspension or disbarment orders. *See*, for example, *Attorney Grievance v. Massagli*, 352 Md. 277, 721 A.2d 698 (1998) and other cases cited in Reporter's Note to proposed Rule 16–770 (26:9 Md. Register at 709). The intent was to consolidate those "wind-up" duties in the Rule itself, to avoid having to state them in individual orders.

The Court made substantial revisions to many of the Rules Committee's proposals, and, although it left most of proposed Rule 16–770 (which, as the result of other revisions, was renumbered to Rule 16–760) intact, we made critical changes to sections (a) and (c)(1). Section (a) was rewritten to provide:

"Unless otherwise stated in the order, an order providing for the disbarment, suspension, or reprimand of a respondent or the placement of a respondent on inactive status shall take effect immediately. The order may provide that the disbarment, suspension, reprimand, or placement on inactive status be deferred for a specified period of time to allow the respondent a reasonable opportunity to comply with the requirements of section (c) of this Rule."

That, in effect, reversed the "default" provided for in the Rules Committee proposal and in the ABA Model Rule: the order was to take effect immediately unless it provided otherwise. The intent was to require the Court to act affirmatively if it wanted to *delay* the effect of the order.

---

4. ABA Model Rule 27E provides, in relevant part, that "Orders imposing disbarment, suspension, or transfers to disability inactive status are effective on a date [15] days after the date of the order, except where the court finds that immediate disbarment or suspension is necessary to protect the public."

Section (c), as recommended by the Rules Committee, directed, in relevant part, that, unless otherwise stated in the order, a lawyer who is suspended or disbarred:

(c)(1) "shall not undertake *any further legal matters* or accept any new clients" (Emphasis added),

(c)(2) "shall take any action necessary to protect current clients,"

(c)(3) "shall conclude any current client matters that can be concluded within 15 days of the date of the order," and

(c)(6) within 30 days after the date of the order, "shall withdraw from all client matters."

We left the last three of those provisions essentially intact, but we rewrote § (c)(1) to require that the suspended or disbarred lawyer "not accept any new clients *or undertake any new or further representation of existing clients.*" (Emphasis added). That change was intended to make more specific the recommended prohibition against undertaking "further legal matters," to make clear that, unless the order provided otherwise, the attorney could not undertake any further representation of existing clients. Unless the Court affirmatively chose otherwise, a suspended or disbarred lawyer simply could not continue to practice law, even for existing clients.

Since our adoption of Rule 16–760, the Court has rarely delayed the effect of disbarment or suspension orders, even in non-consensual cases involving lawyers who were actively practicing in Maryland, in which a full Opinion was filed.[5]

---

**5.** *See Attorney Grievance v. Tayback,* 378 Md. 578, 837 A.2d 158 (2003); *Attorney Grievance v. Greenberg,* 378 Md. 175, 835 A.2d 1102 (2003); *Attorney Grievance v. West,* 378 Md. 395, 836 A.2d 588 (2003); *Attorney Grievance v. Gore,* 380 Md. 455, 845 A.2d 1204 (2004); *Attorney Grievance v. Velasquez,* 380 Md. 651, 846 A.2d 422 (2004); *Attorney Grievance v. Brown,* 380 Md. 661, 846 A.2d 428 (2004); *Attorney Grievance v. Mininsohn,* 380 Md. 536, 846 A.2d 353 (2004); *Attorney Grievance v. Watson,* 382 Md. 465, 855 A.2d 1213 (2004); *Attorney Grievance v. Rose,* 383 Md. 385, 859 A.2d 659 (2004); *Attorney Grievance v. Christopher,* 383 Md. 624, 861 A.2d 692 (2004); *Attorney Grievance v. MacDougall,* 384 Md. 271, 863 A.2d 312 (2004); *Attorney Grievance v. Duvall,* 384 Md. 234, 863 A.2d 291 (2004); *Attorney*

Only in a handful of cases, mostly involving short periods of suspension, has the Court delayed the effect of the order. *See Attorney Grievance v. Potter,* 380 Md. 128, 164, 844 A.2d 367, 388 (2004); *Attorney Grievance v. Kreamer,* 387 Md. 503, 539, 876 A.2d 79, 100 (2005); *Attorney Grievance v. Obi,* 393 Md. 643, 661, 904 A.2d 422, 432 (2006); *Attorney Grievance v. Ward,* 394 Md. 1, 39, 904 A.2d 477, 500 (2006); *Attorney Grievance v. Rees,* 396 Md. 248, 255, 913 A.2d 68, 72 (2006); *see also Attorney Grievance v. Ficker,* 399 Md. 445, 455, 924 A.2d 1105, 1111 (2007). Maignan's case did not fall into that

Grievance v. *Ellison,* 384 Md. 688, 867 A.2d 259 (2005); *Attorney* Grievance v. *James,* 385 Md. 637, 870 A.2d 229 (2005); *Attorney* Grievance v. *Brisbon,* 385 Md. 667, 870 A.2d 586 (2005); *Attorney* Grievance v. *Zuckerman,* 386 Md. 341, 872 A.2d 693 (2005); *Attorney* Grievance v. *Mitchell,* 386 Md. 386, 872 A.2d 720 (2005); *Attorney* Grievance v. *Jordan,* 386 Md. 583, 873 A.2d 1161 (2005); *Attorney* Grievance v. *Pennington,* 387 Md. 565, 876 A.2d 642 (2005); *Attorney* Grievance v. *Zakroff,* 387 Md. 603, 876 A.2d 664 (2005); *Attorney* Grievance v. *Cherry–Mahoi,* 388 Md. 124, 879 A.2d 58 (2005); *Attorney* Grievance v. *Parker,* 389 Md. 142, 884 A.2d 104 (2005); *Attorney* Grievance v. *Kovacic,* 389 Md. 233, 884 A.2d 673 (2005); *Attorney* Grievance v. *Guida,* 391 Md. 33, 891 A.2d 1085 (2006); *Attorney* Grievance v. *Rose,* 391 Md. 101, 892 A.2d 469 (2006); *Attorney Grievance v. Reinhardt,* 391 Md. 209, 892 A.2d 533 (2006); *Attorney Grievance v. Kapoor,* 391 Md. 505, 894 A.2d 502 (2006); *Attorney Grievance v. Calhoun,* 391 Md. 532, 894 A.2d 518 (2006); *Attorney Grievance v. Holt,* 391 Md. 673, 894 A.2d 602 (2006); *Attorney Grievance v. Guberman,* 392 Md. 131, 896 A.2d 337 (2006); *Attorney Grievance v. Lee,* 393 Md. 385, 903 A.2d 360 (2006); *Attorney Grievance v. Roberts,* 394 Md. 137, 904 A.2d 557 (2006); *Attorney Grievance v. Sutton,* 394 Md. 311, 906 A.2d 335 (2006); *Attorney Grievance v. Butler,* 395 Md. 1, 909 A.2d 226 (2006); *Attorney Grievance v. Steinberg,* 395 Md. 337, 910 A.2d 429 (2006); *Attorney Grievance v. Sweitzer,* 395 Md. 586, 911 A.2d 440 (2006); *Attorney Grievance v. Midlen,* 395 Md. 628, 911 A.2d 852 (2006); *Attorney Grievance v. Hodgson,* 396 Md. 1, 912 A.2d 640 (2006); *Attorney Grievance v. Baker,* 396 Md. 15, 912 A.2d 651 (2006); *Attorney Grievance v. Ward,* 396 Md. 203, 913 A.2d 41 (2006); *Attorney Grievance v. McCulloch,* 397 Md. 674, 919 A.2d 660 (2007); *Attorney Grievance v. Mba–Jonas,* 397 Md. 690, 919 A.2d 669 (2007); *Attorney Grievance v. Hill,* 398 Md. 95, 919 A.2d 1194 (2007); *Attorney Grievance v. Goff,* 399 Md. 1, 922 A.2d 554 (2007); *Attorney Grievance v. Wingerter,* 400 Md. 214, 929 A.2d 47 (2007); *Attorney Grievance v. Floyd,* 400 Md. 236, 929 A.2d 61 (2007); *Attorney Grievance v. Hekyong Pak,* 400 Md. 567, 929 A.2d 546 (2007); *Attorney Grievance v. Robertson,* 400 Md. 618, 929 A.2d 576 (2007); *Attorney Grievance v. Siskind,* 401 Md. 41, 930 A.2d 328 (2007).

category. As noted, the suspension was effective immediately, on December 22, 2005.

Although some of the provisions of section (c) may, at first glance, appear inconsistent with a suspension or disbarment order that takes effect immediately, they are not really so and can be read in harmony with section (a). Most are basically clerical or housekeeping in nature. *See* Rule 16–760(c)(4), (5), and (7) through (12). The only ones at issue here are those noted above—§ (c)(1), (2), (3), and (6)—and they, too, can be read harmoniously.

Section (c)(1) is the critical provision: from and after the effective date of the order, the lawyer "shall not accept any new clients *or undertake any new or further representation of existing clients."* (Emphasis added). There is nothing unclear about that provision and nothing inconsistent between it and the requirement in § (c)(3) that the attorney conclude current client matters that can be concluded within 15 days after the date of the order, or the requirement in § (c)(6) that the attorney withdraw from all client matters within 30 days. Even within those times, intended to permit the attorney to do what is necessary to sever all professional connection with his or her clients—delivery of files, notifying judicial or other tribunals and various interested persons, withdrawing appearances, assisting the client in finding other counsel, etc.—the attorney may not provide further representation for those clients.

The one provision that needs some clarification is § (c)(2), requiring the lawyer to "take any action necessary to protect current clients." That may require a very prompt notice to the client, to adverse or other interested parties, and to tribunals in which litigation is pending. It may require expedited efforts to assist the client in obtaining new counsel, and, if necessary because of a true emergency, a request of this Court to consider a limited stay of the disbarment or suspension order. It cannot properly be read, however, as contravening the clear prohibition in § (c)(1) against any further representation of a client.[6]

---

6. In situations where, based on the findings and conclusions of the hearing judge, any exceptions thereto filed by Bar Counsel, and a

■ In the case at hand, Maignan should have advised the court, as soon as he learned of the suspension, that he was not permitted to continue his representation of Fleming, on December 30 or at any time thereafter. His failure to do that, coupled with his appearance on behalf of Fleming and his assertion that his representation could continue until January 13, did, indeed, constitute a violation of MRPC 3.3(a)(1), 5.5(a), and 8.4(a), (c), and (d), and we therefore overrule his exceptions to Judge Northrop's findings.

### *Complaint of Joann Clark*

Bar Counsel averred that, in June, 2002, Ms. Clark retained Maignan to pursue an employment discrimination case and that, on June 27, 2002, she paid him, in cash, a fee of $4,000. The retainer agreement stated that the fee would be placed in Maignan's escrow account and that his firm would bill against that amount. Bar Counsel charged that, in contravention of that agreement, Maignan did not deposit the money in his escrow account and that he failed to maintain complete records of that money. On those allegations, he charged Maignan with violating MRPC 1.1 (Competent representation), 1.15 (Safekeeping client property), 8.4(a) (Violating another MRPC), and 8.4(d) (Conduct prejudicial to administration of justice). Maignan claimed that he never received the $4,000.

---

recommended sanction by Bar Counsel, suspension or disbarment may reasonably be regarded as a possible sanction if this Court were to find a violation, attorneys would be well-advised to inform the Court of any known or anticipated implementation issues and request consideration of some grace period in the event a disbarment or suspension order is entered. That, at least, would give the Court some basis for considering whether to delay the effective date of such an order. The Court is aware that, when the attorney is involved in pending litigation and has court appearances looming, a disbarment or suspension order that takes effect immediately can cause problems for the tribunal and for other litigants and their attorneys, and that it may need to balance that against the basic precept that a lawyer who has been disbarred or suspended should not be allowed to continue practicing law. The Court has not been inclined to weigh that balance, however, if it is unaware that it needs to do so; it is not for the Court to have to guess at what a lawyer has pending.

At the hearing before Judge Northrop, Ms. Clark testified that she was an employee of the District of Columbia school system, that she desired to pursue a discrimination claim against her employer, that she was referred to Maignan by her sister's church, that she met with him in May, 2002, that Maignan quoted a fee of about $3,500 to handle her case, and that she then cashed in $4,000 of savings bonds from her grandson's college fund and paid him the proceeds in cash. The payment was made in May at Maignan's office. A few days later, she said, she received a letter from Maignan thanking her for choosing his firm along with a retainer agreement. In March, 2005, she paid an additional $2,000, which Maignan admitted receiving.

In support of her testimony regarding the $4,000, Ms. Clark produced redemption statements from Sun Trust showing that, on May 13, 2002, U.S. Savings bonds in the face amount of $2,900 were redeemed for an aggregate amount, including accrued interest, of $4,103. There was produced as well a two-page letter from Maignan, the first page carrying a date of June 27, 2002, and the second page showing a date of March 13, 2006. The letter confirmed that Maignan would commence representation after receipt of the $4,000. Attached to the letter was a retainer agreement, dated March 13, 2006, which also noted that Ms. Clark would pay a $4,000 retainer fee "to secure Maignan & Associates' representation, for initial interview, for creating a file and for initial office personnel work." The fee, it continued, would be placed in the Law Firm's escrow account.

Ms. Clark said that she paid the $4,000 before receiving the letter and retainer agreement, although those documents, dated at the earliest June 27, 2002, suggest that the fee had not yet been paid and that the representation would not commence until that was done. Yet among Maignan's records was found a copy of a composite statement to Ms. Clark, also dated March 31, 2006, showing a credit to her account of $4,000 as of June 27, 2002. According to that statement, Maignan proceeded in July, 2002, to work on her case. At some point, Maignan filed a lawsuit on Ms. Clark's behalf in

the D.C. Superior Court. In March, 2004, the action was removed to the U.S. District Court. By then, over $7,000 had been charged against the $4,000. Maignan continued with the case until his suspension in December, 2005, by which time, even with the payment of the additional $2,000, $20,451 was shown as due. No records from the D.C. Superior Court are in evidence, but docket entries from the District Court show more than modest activity prior to the payment of the $2,000 in March, 2005, including the filing and answering of discovery. If, in fact, the $4,000 had not been paid, not only would the running account kept by Maignan have been largely fictional, but he would have done a great deal of work on Ms. Clark's case in contravention of the assertions in his letter and retainer agreement that representation would not commence until the $4,000 was paid.

Maignan testified that, when he terminated his representation in December, 2005, he sent his entire file to Ms. Clark and had nothing left. He claimed that the letter and retainer agreement placed in evidence were not genuine. He said that he recreated those documents electronically in March, 2006, which accounted for the March dates on the letter and retainer agreement. The statement showing the $4,000, he said, was not created until 2003, and was an attempt to recreate what had occurred earlier based on the retainer agreement that called for a $4,000 payment.

On this disputed evidence, Judge Northrop credited Ms. Clark's testimony and found as a fact that Maignan had received the $4,000 fee at the outset of the representation. Indeed, he declared that he "seriously questions the credibility of the Respondent." The judge referred to the running balance statement and noted that Maignan had not produced any record to contradict Ms. Clark's testimony. He also noted, in response to Maignan's claim that the retainer agreement placed into evidence was not genuine, a letter sent by Maignan's attorney to the D.C. Bar Counsel enclosing a copy of the letter and retainer agreement and attesting that "there is no dispute that Mr. Maignan was retained in this matter

under the parameters of the retainer agreement." Clearly, the $4,000 was never deposited in Maignan's trust account, and, on that basis, Judge Northrop found violations of MRPC 1.1 (failure to maintain trust funds in a trust account constitutes incompetence), 1.15(a), 8.4(a), and 8.4(d).

Maignan's exceptions challenge most of the credibility-based fact-finding by Judge Northrop and his conclusions drawn from that fact-finding. We overrule those exceptions. Judge Northrop was entitled to resolve the disputed evidence in accordance with his assessment of the relative credibility of Ms. Clark and Maignan, which was not favorable to Maignan. As the judge indicated, Maignan's version required him to disavow his own records.

### SANCTION

The violations found with respect to No. 64 are serious ones. Given that this is the first opportunity we have had to address the relevant implementation issues in Rule 16–760, which is a relatively new Rule, we are inclined to be somewhat lenient with respect to Maignan's belief that he had some leeway in winding up his representation of Fleming, even though we conclude that his belief was not well-founded. Given Judge Northrop's findings with respect to the Clark matter, however, little leniency is warranted. Maignan is currently on an indefinite suspension. We shall continue that suspension.

**PETITION IN NO. 13 DISMISSED. AS TO NO. 64, IT IS ORDERED THAT RESPONDENT BE INDEFINITELY SUSPENDED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST PETER RICHARD MAIGNAN.**