968 A.2d 593

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Charles M. SHRYOCK, III.

Nos. AG 16, Sept. Term, 2007, AG 68, Sept. Term, 2007.

Court of Appeals of Maryland.

March 18, 2009.

Reconsideration Denied May 1, 2009.

Raymond A. Hein, Asst. bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n of Maryland), for Petitioner.

Melvin G. Bergman, Greenbelt, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

GREENE, J.

We have before us two petitions for disciplinary or remedial action filed by Bar Counsel, on behalf of the Attorney Grievance Commission, against respondent, Charles M. Shryock, III. Although the petitions were filed separately, involve different matters, and were referred to different judges for hearing, upon our receipt of the findings and conclusions of the hearing judges, we consolidated the petitions and decided to address the matters in this one Opinion. We note, at the outset, that Shryock has been indefinitely suspended from the practice of law in Maryland since October 2, 2005. *Attorney*

*Grievance Comm'n v. Shryock,* 388 Md. 622, 881 A.2d 1147 (2005).

Petition No. 16, which involves Bar Counsel's complaint that Shryock continued to use his attorney trust account while suspended from the practice of law and knowingly failed to respond to Bar Counsel's lawful demand for information, was filed on July 13, 2007. In accordance with Maryland Rule 16–752(a),[1] we referred the petition to Judge Sean D. Wallace, of the Circuit Court for Prince George's County, who conducted a hearing on December 17, 2007, and presented to us his findings of fact and conclusions of law. Specifically, Bar Counsel alleged that Shryock violated the Maryland Rules of Professional Conduct (MRPC) 5.5(b)(2) (Unauthorized practice of law)[2]; 8.1(b) (failure to respond to Bar Counsel's lawful demands)[3]; and 8.4(a), (c), and (d) (Misconduct)[4].

As to the facts, Judge Wallace found:

---

1. Md. Rule 16–752(a) provides:
    (a) **Order.** Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.
    \*    \*    \*    \*    \*    \*
2. **Rule 5.5(b)(2)** provides in part:
    (b) A lawyer who is not admitted to practice in this jurisdiction shall not:
    \*    \*    \*    \*    \*    \*
    (2) hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction.
3. **Rule 8.1. Bar Admission and Disciplinary Matters.**
    An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
    \*    \*    \*    \*    \*    \*
    (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.
    \*    \*    \*    \*    \*    \*
4. **Rule 8.4. Misconduct.**
    It is professional misconduct for a lawyer to:

In accordance with Rule 16–757(b), all factual findings are based on the clear and convincing standard, except as specifically stated otherwise. Furthermore, the facts are essentially undisputed.

The Respondent was admitted to the Maryland Bar on November 9, 1979. By Order of the Court of Appeals, Respondent was indefinitely suspended from further practice of law in this State, effective on October 2, 2005. At the time of his suspension, Respondent had an attorney trust account in the name of "CHARLES M. SHRYOCK III, ESQ., MD/IOLTA ATTY TRUST ACCT." The deposit slips and checks associated with this account also bore the same designation.

Respondent was familiar with the requirements of Rule 16–760.[5] Pursuant to Rule 16–760(c), Respondent closed his law office, concluded all matters which he could, notified clients with any unfinished matters of his suspension, withdrew from all pending matters, and notified all telephone directories to delete any reference to him as an attorney. Rule 16–760(d)(3) prohibited Respondent from

> using any stationery, bank account, checks, or labels on which the respondent's name appears as an attorney or in connection with any office for the practice of law.

---

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

    \*    \*    \*    \*    \*    \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

    \*    \*    \*    \*    \*    \*

**5.** Rule 16–760 refers to Orders imposing discipline or inactive status.

However, Respondent kept open his attorney trust account. He had been advised by his counsel that he could keep it open to deal with the resolution of past matters and collection of fees earned prior to his suspension.

Following his suspension Respondent acted as a real estate broker using a license he had obtained years before. Respondent deposited, into his attorney trust account, monies related to his real estate business and other personal matters, and made disbursements from the account using checks with the designation "CHARLES M. SHRYOCK III, ESQ., MD/IOLTA ATTY TRUST ACCT."

On October 12, 2006, Bank of America sent an overdraft report to the Attorney Grievance Commission related to Respondent's attorney trust account. That report was followed soon thereafter by two additional overdraft reports related to that account. As a result, Deputy Bar Counsel Glenn Grossman wrote to Mr. Shryock on October 17, 2006 asking for an explanation of the overdraft and seeking copies of "your client ledger cards, deposit slips, cancelled checks (front and back, if available), and monthly bank statements for the period July 2006 to present." Respondent immediately contacted Melvin G. Bergman, Esq., to represent him in connection with this matter. However, neither Respondent nor Bergman timely filed a written response.

On November 24, 2006, Sterling Fletcher, an investigator for Petitioner, telephoned Respondent to inquire about the matter. Respondent told Fletcher that "it was a mistake on his part . . . he didn't get to deposit the money into the account in time . . . that he was using the account for his real estate business and that he has since closed out the account." Respondent further stated that he would follow up with Bergman to find out what happened to the response.

Bergman had several telephone contacts with Bar Counsel regarding this matter after the initial Grossman letter of October 2006. This resulted in an extension of the time in which to file a written response until January 12, 2007.

However, neither Respondent nor his counsel filed such a written response until April 2, 2007, nine days before the peer review panel hearing. Further, Respondent never provided the requested documentation to Bar Counsel either directly or through his counsel. Another request was made on May 18, 2007 for such materials. Respondent did not provide them, and thus Bar Counsel issued a Bank Records Subpoena to Bank of America to obtain the requested items.

The Respondent repeatedly expressed remorse for his actions in this case.

Based upon the findings of fact, Judge Wallace determined that Shryock violated MRPC 5.5(b)(2) by "maintaining and using his attorney trust account, and the deposit slips and checks related thereto, which bore the designation 'CHARLES M. SHRYOCK, III, ESQ., MD/IOLTA ATTY TRUST ACCT.'" Judge Wallace further determined that Shryock violated MRPC 8.1(b) "in failing to file a written response to Bar Counsel[']s inquiry for more than six months and also by failing to provide the documentation requested by Bar Counsel in October 2006 and May 2007." Further, Judge Wallace determined that Shryock violated MRPC 8.4(a), reasoning that the result was "axiomatic[, the court] ... having found a violation of Rule 5.5 and 8.1."

The hearing judge determined that Shryock did not violate MRPC 8.4(c) and (d). Judge Wallace reasoned that "[a]s to subsection (c), the Court does not find that Respondent had any dishonest intent in continuing to use his attorney trust account after he was suspended." According to the hearing judge, "Respondent was using the account (albeit improperly) to avoid the inconvenience and expense of opening a new account without the attorney designations." As to MRPC 8.4(d), the hearing judge determined that there was no violation because "Bar Counsel was unable to specify how Respondent's conduct was prejudicial to the administration of justice."

Neither Bar Counsel nor Shryock filed exceptions to the

findings of the hearing court. Pursuant to Rule 16–759(b)(2) [6] we treat the findings of fact as established for the purpose of determining the appropriate sanction. *Attorney Grievance Comm'n v. Stolarz,* 379 Md. 387, 397 n. 5, 842 A.2d 42, 47 n. 5 (2004).

Petition No. 68 involves Bar Counsel's complaint that Shryock continued to practice law, while suspended, with regard to certain real estate matters and through the course of his activities violated MRPC 1.8 (Conflict of Interest) [7]; 4.3 (Dealing with Unrepresented Person) [8]; 5.5(a) (Unauthorized Practice of Law) [9]; and 8.4(a), (b), (c), and (d) (Misconduct). [10]

---

6. Md. Rule 16–759(b)(2) provides in part:
   (b) **Review by Court of Appeals.**
   *     *     *     *     *     *
   (2) Findings of fact. (A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.

7. **Rule 1.8. Conflict of Interest: Current Clients: Specific Rules.**
   *     *     *     *     *     *
   (i) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:
   (1) acquire a lien authorized by law to secure the lawyer's fee or expenses; and
   (2) subject to Rule 1. 5, contract with a client for a reasonable contingent fee in a civil case.
   *     *     *     *     *     *

8. **Rule 4.3. Dealing with Unrepresented Person.**
   In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.

9. **Rule 5.5 Unauthorized Practice of Law; Multijurisdictional Practice of Law.**
   (a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.
   *     *     *     *     *     *

10. **Rule 8.4. Misconduct.**
    It is professional misconduct for a lawyer to:

In accordance with Maryland Rule 16–752, we referred the petition to Judge Beverly J. Woodard, of the Circuit Court for Prince George's County, who conducted a hearing on June 16, 2008, and presented to us her findings of fact and conclusions of law.[11] As to the facts Judge Woodard concluded:

Mark H. Wittstadt, Esquire (Wittstadt) wrote to Bar Counsel on February 15, 2007 to report his concerns regarding Respondent's activities regarding real estate property located at 1002 Shelby Drive, Oxon Hill, Maryland 20745 (hereafter the "Shelby Drive property").

After an investigation Bar Counsel originally determined Respondent had engaged in professional misconduct as defined in Maryland Rule 16–701(i) and violated the following Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812[:]

Rule 1.8   Conflict of Interest:  Current Clients:  Specific Rules

Rule 4.3   Dealing with Unrepresented Person

Rule 5.5   Unauthorized Practice of Law:

Multijurisdictional Practice of Law

Rule 8.4   Misconduct

At the June 16th hearing, Bar Counsel withdrew its allegation regarding violations of Rule 1.8 and Rule 4.3.

Since his suspension Respondent has been actively operating a real estate business known as "Shyrock Realty." One of the agents who has a brokerage license with the

---

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice.

*   *   *   '*   *   *

**11.** Charles M. Shryock, III's name is misspelled "Shyrock" in Judge Woodard's findings of fact and conclusions of law.

company is Andrew Jackson (Jackson). Respondent and Jackson have no written agreement defining their relationship in Shyrock Realty. At a foreclosure sale on January 4, 2007 Jackson, acting as an individual, was the successful bidder on the Shelby Drive property. Mark H. Wittstadt, Esquire (Wittstadt) acted as the Substitute Trustee in charge of selling this property.

According to Jackson, after [the] purchase he discovered there was a pending contract for sale on the property with the deceased owner's son. He decided it would be best to move the property quickly and allow the contract for sale to go to settlement. He felt, as well as did the Respondent, the property was not worth the approximate $232,000 he was obligated to pay under the foreclosure sale. The price in the pending contract was $170,000.

Two documents, an Assignment of Interest in Real Property (Assignment) and Consent Order of Dismissal (Dismissal) were prepared for presentation to the Substitute Trustee. After receiving the fax on the Assignment and Dismissal, Wittstadt contacted the number that appeared on the foreclosure contract. The number belonged to Shyrock Realty. Wittstadt never spoke to Jackson on this, or any other occasion. Instead Respondent answered and explained to Wittstadt that the property was overpriced and should have been advertised as a shell and not a dwelling. He urged Wittstadt to agree with the proposal since in everyone's opinion it would benefit all the parties involved. Ultimately, Wittstadt refused to sign any documents on behalf of his client. He also expressed concern with the legality of the proposal and Shyrock's role in the transaction. Shyrock told him he was not acting as an attorney or giving advice to any of the parties. He further added he was suspended from the practice of law. Wittstadt sent letters confirming his clients' position to go through with the sale to both Respondent and Jackson. Respondent made clear that Jackson would never go through with the purchase.

The court ratified the sale, and indeed Jackson did not go to settlement. As promised by Wittstadt, a Petition to Order Resale of Property at Sole Risk and Expense of Defaulting Purchaser at First Foreclosure Sale was filed on April 3, 2007. A Response to this Petition was filed under the signature of Jackson. Respondent at the same time filed on his own behalf a Motion to Intervene by Interested Person. Respondent's basis for his Motion was the fact that he had put up the original $3,500 used by Jackson at the foreclosure sale. Moreover, under the drafted Agreement, although he had been reimbursed his original $3,500, he would make an additional $3,250 if the house went to settlement under the pending contract. (Jackson would receive $3,250 as well.) Both he and Jackson felt they would eventually lose a substantial amount of money if the foreclosure sale proceeded. On June 5, 2007, Judge Herman Dawson denied both Jackson's and Respondent's Motions and granted Wittstadt's Motion for Resale of the Property.

Subsequently a Notice of Appeal was filed jointly by Respondent and Jackson as to Judge Dawson's denial of their respective motions. These appeals were eventually dismissed by the Court of Special Appeals when the requisite briefs were not filed.

Judge Woodard made the following conclusions of law:

Pursuant to MRPC 16–757(b) Petitioner has the burden to prove violations of the cited rules by clear and convincing evidence.

### I. *Maryland Rules of Professional Conduct 5.5*

(a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.

To examine if Respondent's activities constitute the unauthorized practice of law Bar Counsel references the Maryland Code, Business and Professions Article 10:101(h)(2)

(ii) preparing an instrument that affects title to real estate

(iii) preparing or helping in the preparation of any form or document that is filed in a court or affects a case that is or may be filed in a court; or

(ii) giving advice about a case that is or may be filed in a court.

Under the terms and conditions of the foreclosure sale, Jackson would have been the owner of the Shelby property subject to the interest of the senior lien holder. The proposed Assignment prepared by Respondent altered that arrangement and "affected title to real estate". Title and ownership of the property would have gone to the buyer in the pending contract. Respondent also prepared a Consent Order of Dismissal to reflect this change in title that needed to be filed with the Court. It's Respondent's contention "these documents were drafted by him after receiving input from everybody." He testified, "none of these documents necessitated lawyer intervention." Respondent claims this type of filing is done often in the real estate business. The Court may have accepted this proposition if there had been evidentiary proof these were standard real estate documents used by the industry. This is not the case. More troubling the Dismissal contains particularized language to reflect the preceding Agreement. If Respondent had been successful in convincing Wittstadt to go along with the Agreement this Dismissal would have been an official court filing.

The second, filing, Jackson's Response and Supplement to Petition to Order Resale, is 11 (eleven) pages long. Respondent claims he did not act as Jackson's attorney in drafting the document. Jackson supports this by stating he relied on Respondent to draft the Response and fill out forms as the "listing agent/broker." Jackson admitted he never consulted a licensed attorney prior to the Response being drafted or made any inquiry as to what should be filed. The Court does not question the fact that Respondent was intimately involved in this transaction and knew

the details of what had transpired. However, the Response and Supplement goes beyond simply being a recitation of the facts. It details what it terms *"negligent"* actions by the Plaintiff and asks they be *"estopped"* from trying to claim any expense or interest. . . ." To this day, Jackson doesn't know what is contained in his Response. This was not a collaborative effort between Respondent and Jackson, with Respondent stepping in only because Jackson suffers from a visual impairment and is unable to type.

The third filing to consider is Respondent's Motion to Intervene. Respondent argues he filed this pro se to protect his personal interests in the transaction. He understandingly needs to make a living and finds it difficult at times to turn off his legal knowledge in order to pursue his real estate career. As a citizen, he had every right to attempt to protect his interest through this filing. He stood to earn $3,250 and was concerned Shyrock Realty, as well as Jackson, had made a terrible decision in bidding on the Shelby property.

The last filings were an Appeal filed jointly on behalf of both Respondent and Jackson regarding Judge Dawson's denial of their respective Motions. Jackson reiterates this Appeal was filed by Shyrock as the listing agent/broker and not as an attorney. It is evident Jackson's displeasure with the course of events was equal to Respondents. The Court does not doubt they had discussion of how to proceed. While Respondent knew how to formerly note an appeal, it was a mutual decision.

It is clear the Respondent engaged in the practice of law when he drafted the Assignment and Consent to Dismissal. Specifically, these acts constituted a violation of 10.101(h)(2)(ii)(iii) and (iv). The Response to Resale of Property drafted by Respondent on behalf of Jackson is a violation of 10.101(h)(ii) and 10.101(h)(2)(iv).

After reviewing all evidence, considering argument of counsel and making the above referenced factual findings, the Court finds the Commission has not met its burden by clear and convincing evidence that the filing of the Appeal

constituted practicing law as defined in 10.101(h)(2)(ii)(iii), or (iv). Therefore there was no violation of MRPC 5.5(a).

Judge Woodard acknowledged in the section of her opinion entitled "Conclusions of Law" that Shryock prepared several documents filed in the underlying foreclosure action, namely, the "proposed Assignment," the "Consent Order of Dismissal," "Jackson's Response and Supplement to Petition to Order Resale," the "Motion to Intervene," and the "Appeal." In addition, under the "Conclusions of Law" heading, Judge Woodard, specifically, pointed out that "the Response and Supplement goes beyond simply being a recitation of the facts. It details what it terms *'negligent'* actions by the Plaintiff and asks they be *'estopped* from trying to claim any expense or interest. . . .' To this day, Jackson doesn't know what is contained in *his* Response."

■ The hearing judge concluded that, under the circumstances, Shryock engaged in the unauthorized practice of law as defined by Md.Code (1989, 2000 Repl.Vol.), Business Occupations and Professions Article (BOP), § 10–101(h)(2)[12] and specifically violated MRPC 5.5(a) and 8.4(a). Also Judge Woodard concluded that Shryock's violation of MRPC 5.5(a) automatically triggered a violation of MRPC 8.4(a). According to Judge Woodard, Shryock's act of preparing and filing the notice of appeal, however, did not constitute a violation of MRPC 5.5(a). Likewise, according to the hearing judge, Shryock's unauthorized practice of law did not warrant a violation of MRPC 8.4(b), (c), and (d).

Neither Bar Counsel nor Shryock filed exceptions to the hearing judge's determination that Shryock violated MRPC

---

**12.** BOP § 10–101(h)(2) provides:

(2) "Practice law" includes:

(i) advising in the administration of probate of estates of decedents in an orphans' court of the State;

(ii) preparing an instrument that affects title to real estate;

(iii) preparing or helping in the preparation of any form or document that is filed in a court or affects a case that is or may be filed in a court; or

(iv) giving advice about a case that is or may be filed in a court.

5.5(a). According to Bar Counsel, Shryock's involvement in preparing and filing the notice of appeal constituted the practice of law; therefore, Judge Woodard erred in deciding the issue to the contrary. In addition, Bar Counsel takes exception to the hearing judge's conclusion that Shryock did not violate MRPC 8.4(b) and (c). Bar Counsel makes no argument with regard to 8.4(d), however.

This Court has stated "that to determine whether an individual has engaged in the practice of law, the focus of the inquiry should be on whether the activity in question required legal knowledge and skill in order to apply legal principles and precedent." *Attorney Grievance Comm'n v. James*, 355 Md. 465, 476, 735 A.2d 1027, 1033 (1999) (citations and quotations omitted).

In relevant part, BOP § 10–101(h)(1) provides that "Practice of law" means to engage in any of the following activities:

(i) giving legal advice;

(ii) representing another person before a unit of the State government or of a political subdivision; or

(iii) performing any other service that the Court of Appeals defines as practicing law.

Further, § 10–101(h)(2) "Practice of law" includes:

\* \* \* \* \* \*

(ii) preparing an instrument that affects title to real estate;

(iii) preparing or helping in the preparation of any form or document that is filed in a court or affects a case that is or may be filed in a court; or

(iv) giving advice about a case that is or may be filed in a court.

Specifically, Judge Woodard was persuaded that "Respondent engaged in the practice of law when he drafted the Assignment and Consent to Dismissal [and the] Response to Resale of Property ... on behalf of Jackson." As to the filing of the Appeal, Judge Woodard was not persuaded that Shryock's actions constituted the practice of law.

In our view, Shryock's involvement in the foreclosure matter before the Circuit Court for Prince George's County constituted the practice of law. First, when he responded to the Substitute Trustee's inquiries, Shryock spoke to the trustee on behalf of Jackson, indicating what Jackson would and would not do with respect to purchase of the Shelby Drive property. Any reasonable person observing the activities of Shryock on behalf of Jackson could conclude reasonably that Shryock was acting as Jackon's attorney. As Bar Counsel pointed out, and the hearing judge confirmed, Shryock prepared the Assignment which was designed to "affect title to real estate" that Jackson had purchased at the foreclosure sale. Also, Shryock "prepared a Consent Order of Dismissal to reflect [a] change in title" and prepared and filed with the court Jackson's "Response to Petition to Order Resale of Property" which contained 11 (eleven) pages of legal argument and analysis. Furthermore, as Bar Counsel notes in his argument before this Court, Shryock's activities in "preparing or helping in the preparation" of documents filed on behalf of Jackson in the Circuit Court and in the Court of Special Appeals were connected inextricably and constituted the practice of law. To be certain, in filing the notice of appeal, Shryock challenged the Circuit Court's ruling that directed resale of the mortgaged property and challenged the Circuit Court's order denying his own Motion to Intervene. Thus, Shryock's actions in filing the appeal benefitted both Jackson's interest and Shryock's interest in protecting his own status [13] in the litigation. Accordingly, the hearing judge erred, as a

---

13. With respect to Shryock's status in the foreclosure case, he contends that his actions were carried out to protect his own financial interest in the Shelby Drive property. The problem with this argument is that Shryock did not purchase the property in question. The successful bidder was Jackson. Thus, as a result of the purchase, Shryock had no valid claim (legal or equitable) to the subject property. Accordingly, the only interest that his actions in this matter could have protected were those of Jackson. *See Simard v. White*, 383 Md. 257, 273 n. 13, 859 A.2d 168, 177 n. 13 (2004) (noting that the purchaser at a foreclosure sale "is regarded as the equitable owner from the time of sale, and entitled to the intermediate rents and profits of the estate") (citations omitted).

matter of law, in concluding that Shryock's filing the notice of appeal was not the practice of law.

A person who violates BOP § 10–601 (unauthorized practice of law) is guilty of a misdemeanor and upon conviction is subject to incarceration, a fine or both.[14]   Section 10–601(b) provides:

> While an individual is on inactive status or disbarred or while the individual's right to practice law is suspended or revoked, the individual may:
>
> (1) discharge existing obligations;
>
> (2) collect and distribute accounts receivable;  or
>
> (3) perform any other act that is necessary to conclude the affairs of a law practice but that does not constitute practicing law.

Section 10–602 states:

> Unless authorized by law to practice law in the State, a person may not represent to the public, by use of a title, including "lawyer," "attorney at law," or "counselor at law," by description of services, methods, or procedures, or otherwise, that the person is authorized to practice law in the State.

The hearing judge determined that Shryock's conduct in this matter did not "rise to a level of placing in question his honesty, trustworthiness or fitness as a lawyer."   Although, the hearing judge acknowledged that, technically the unlawful practice of law is a misdemeanor, she concluded that Shryock's "poor choices" were not matters of dishonesty, trustworthiness or fitness to practice law.   Bar Counsel excepts to the hearing judge's failure to conclude that Shryock violated MRPC 8.4(b) and (c).   According to Bar Counsel, a violation of 10–601 "is still a 'criminal act' which reflects adversely on Respondent's

---

14.   BOP, § 10–606(a)(3) provides in relevant part:

> Except as provided in paragraphs (1) and (2) of this subsection, a person who violates § 10–601 of this subtitle is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $5,000 or imprisonment not exceeding 1 year or both.

honesty, trustworthiness or fitness as a lawyer in other respects." We agree and conclude that the hearing judge was clearly erroneous in her fact finding as to the nature of Shryock's involvement in the foreclosure matter, and she erred as a matter of law in not finding a violation of MRPC 8.4(b) and (c).

Rule 8.4(b) provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." Shryock knew that he was suspended from the practice of law in this State. Yet, notwithstanding his suspension, he engaged in activities that constituted the unauthorized practice of law. Like the respondent in *Attorney Grievance Comm'n v. Awuah*, 374 Md. 505, 524, 823 A.2d 651, 662 (2003), Shryock is guilty of professional misconduct. The premise for Mr. Awuah's violation of MRPC 8.4(b) was that he violated "the strictures of Maryland Code, BOP Sections 10–601 and 10–602, because he portrayed himself as an attorney after he had been suspended in Maryland and continued to practice law in Maryland while under suspension." *Id.; see also Attorney Grievance Comm'n v. Maignan*, 402 Md. 39, 55, 935 A.2d 409, 418 (2007) (holding that an attorney's failure to advise the trial court of his suspension as soon as he learned that he was not permitted to continue representing a client in court, and his assertion that he could represent the client, constituted a violation of MRPC 5.5(a) and 8.4(a), (c), and (d)).

▮ In the present case, Shryock portrayed himself as though he were representing his own interest, after he had been suspended from practice in Maryland, when in fact he was acting as an attorney on behalf of Jackson. There is no evidence that Shryock was mistaken about the status of his suspension. Even if he were mistaken, it would not have justified an unauthorized practice of law (*see AGC v. Maignan, supra* ). Likewise, there is no evidence that he had either an equitable or legal interest in the foreclosure sale. It is without question that his conduct was both deliberate and willful. Accordingly, dishonesty and unfitness to practice law,

both, are reflected in Shryock's knowledge that he was not authorized to practice law and that there was no basis in fact or law for him to have believed that he was authorized to act as he did. *See Attorney Grievance Comm'n v. Velasquez*, 380 Md. 651, 659, 846 A.2d 422, 426 (2004) (holding that engaging in the unauthorized practice of law reflected the actor's unfitness to practice law, and fraud, deceit, and misrepresentation were reflected in his failure to disclose his lack of licensure). Thus, the evidence is clear and convincing that Shryock violated MRPC 8.4(b).

As to a violation of MRPC 8.4(c), Bar Counsel maintains that when Shryock filed his Motion to Intervene, the process was a "sham intended to give Respondent standing to argue Jackson's position, knowing that Respondent himself could not otherwise appear before the court to represent Jackson." Moreover, Bar Counsel contends that by filing the Motion to Intervene, "Respondent misrepresented that he 'shares a business interest with Andrew Jackson as the Foreclosure Purchaser.'" In response to these assertions, the hearing court reasoned that "there is no evidence [that] this filing [of the Motion to Intervene] was a sham to allow Respondent to step in the shoes of Jackson." Further, Judge Woodard determined that both Jackson and Shryock "had an interest to protect; making a profit on this foreclosure sale versus losing a substantial amount of money." According to the hearing judge, Shryock did not intend to deceive anyone by his intervention in the foreclosure process, but merely acted to protect his own financial interest in the foreclosure sale.

Rule 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." As we shall explain, the hearing judge was clearly erroneous in her fact finding as to the nature of Shryock's involvement in the foreclosure matter and she erred as a matter of law in not finding a violation of MRPC 8.4(c). First, as we mentioned previously, the evidence does not support the theory that Shryock had a right to

intervene in the foreclosure proceedings or represent Jackson. Shryock was not the purchaser of the Shelby Drive property and he was not authorized to practice law in Maryland. Second, his violation of MRPC 5.5(a) constituted a violation of MRPC 8.4(b). Like Rule 8.4(b), Rule 8.4(c) contains the elements of dishonesty, fraud, and deceit. According to the evidence, apparently, Shryock was reimbursed the $3,500, he "had put up" for Jackson's use at the foreclosure sale. Even if Shryock "would make an additional $3,250 if the house went to settlement under the pending contract," he was neither entitled to intervene in the foreclosure proceeding in his own right nor on behalf of Jackson because of any anticipated benefits from the sale. If he loaned Jackson any part of the purchase money, Shryock's loan could have been secured by a promissory note or other security instrument. Thus, under the circumstances, the Motion to Intervene was baseless and obviously nothing more than a shield to cover the truth as to Shryock's involvement.

In addition, Shryock informed the Substitute Trustee who conducted the foreclosure sale that (he) Shryock "was not acting as an attorney or giving advice to any of the parties." Based on the evidence presented, this assertion was not true. Regardless of Shryock's motives for involving himself in the foreclosure sale, he possessed the requisite general intent for a violation of Rule 8.4(c) because he mispresented the truth in his conversations with the Trustee and in documents he prepared and filed with the court. We have pointed out in previous cases that "specific intent is not a necessary ingredient of dishonesty or misrepresentation." *Attorney Grievance Comm'n v. Reinhardt,* 391 Md. 209, 222, 892 A.2d 533, 540 (2006).

 In the present case, there was no reasonable basis on which Shryock could have thought that his conduct was lawful. Therefore, consistent with our pronouncements in other cases, Shryock's continuation of the practice of law after suspension in Maryland was a criminal act that also constituted a violation of MRPC 8.4(b) and (c). *Awuah,* 374 Md. at 523–24, 823 A.2d

at 661–62 (stating that an attorney was guilty of professional misconduct in violation of MRPC 8.4(b) and (c) because he portrayed himself as an attorney and continued to practice law in Maryland after he had been suspended); *Attorney Grievance Comm'n v. Briscoe*, 357 Md. 554, 566, 745 A.2d 1037, 1043 (2000) (involving an attorney's deliberate disregard of an order of this Court by continuing to practice law while decertified as a practicing attorney); *Attorney Grievance Comm'n v. Harper & Kemp*, 356 Md. 53, 70, 737 A.2d 557, 566 (1999) (holding that attorney's violation of MRPC 5.5(a) was deliberate and persistent and the attorney had no reasonable basis on which he could have thought his conduct was lawful); *James*, 355 Md. at 465, 735 A.2d at 1027 (involving a persistent unauthorized practice of law where an admitted but suspended lawyer deliberately continued to practice law from his Maryland office after he had been suspended). Thus, we sustain Bar Counsel's exceptions with regard to MRPC 8.4(b) and (c). Ordinarily, these violations would constitute a violation of MRPC 8.4(d), in that the conduct which supports a violation of MRPC 8.4(b) and (c) amounts to conduct prejudicial to the administration of justice.[15] *See Attorney Grievance Comm'n. v. Cherry–Mahoi*, 388 Md. 124, 160, 879 A.2d 58, 80 (2005) (stating that MRPC 8.4(d) is violated when an attorney's conduct "negatively impacts [. . .] the public's image or perception of the courts or the legal profession . . ."); *Reinhardt*, 391 Md. at 222, 892 A.2d at 540 (stating that "[t]his Court's holding that respondent violated 8.4(c) establish[ed] a violation of Rule 8.4(d)").

### Sanction

In this consolidated case, Shryock violated MRPC 5.5(a), 5.5(b)(2), 8.1(b), and 8.4(a), (b) and (c). Shryock recommends that the appropriate sanction is a suspension, concurrent with his present suspension; Bar Counsel, however,

---

15. We do not consider in our determination of the appropriate sanction Respondent's violation of MRPC 8.4(d) because Bar Counsel failed to except to the hearing judge's failure to find a violation of 8.4(d).

recommends that the appropriate sanction is disbarment. We agree with Bar Counsel.

We have said that the purposes of sanctions are to protect the public, to deter other lawyers from engaging in violations of the Maryland Rules of Professional Conduct, and to maintain the integrity of the legal profession. *See, e.g., Awuah,* 374 Md. at 526, 823 A.2d at 663. In *Awuah,* we also iterated that "the public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed." *Id.* Thus, the appropriate sanction depends upon the facts and circumstances of each case, including consideration of any mitigating factors. *Attorney Grievance Comm'n v. Blum,* 373 Md. 275, 303, 818 A.2d 219, 236 (2003).

In cases where an attorney disregarded an order of the court and its prohibition against the practice of law, we primarily considered factors of deterrence, whether the respondent's conduct was wilful and deliberate, and whether the respondent cooperated with Bar Counsel's investigation. *See Attorney Grievance Comm'n v. Barneys,* 370 Md. 566, 591–92, 805 A.2d 1040, 1054–55 (2002). In *Awuah,* we imposed the sanction of disbarment for an attorney who practiced while suspended and was in violation of MRPC 5.5(a), 8.4(b), (c), and (d), and to other Rules violations not relevant here. *Awuah,* 374 Md. at 523–24, 526, 823 A.2d at 661–62, 664. Awuah intentionally practiced immigration law while suspended from the practice of law, but failed to notify his clients that he was suspended. *Awuah,* 374 Md. at 524, 823 A.2d at 662. We held that his conduct "clearly demonstrate[d] that he was unfit to practice law in this State," and we ordered disbarment. *Awuah,* 374 Md. at 520, 823 A.2d at 660. We reasoned that Awuah's misconduct was deliberate and persistent, and that his unauthorized practice of law was "direct and without valid excuse or justification." *Awuah,* 374 Md. at 525, 823 A.2d at 663.

We also noted that these same factors of intentional misconduct and lack of justification or valid excuse were relevant

factors that we considered in imposing the sanction of disbarment in the cases of *Briscoe, James,* and *Attorney Grievance Comm'n. v. Kennedy,* 319 Md. 110, 570 A.2d 1243 (1990). *Awuah,* 374 Md. at 525, 823 A.2d at 663. For example, Briscoe who had been decertified, James who had been suspended, and Kennedy, who had been enjoined from practicing law, all were disbarred for disregarding an order of court against the practice of law. *Id.* Further, in the *Awuah* case, we emphasized that the need to deter other lawyers from violating the Maryland Rules of Professional Conduct was a significant consideration. *Awuah,* 374 Md. at 526, 823 A.2d at 663. As we noted in *Attorney Grievance Comm'n v. Alsafty,* 379 Md. 1, 18, 838 A.2d 1213, 1223–24 (2003), in cases involving the unauthorized practice of law, "deterrence was identified as a significant objective in the sanction decision and in all cases resulting in disbarment, the unauthorized person actually represented clients in a Maryland court."

In the present case, Shryock engaged in the unauthorized practice of law by representing Jackson in court, committing in the process a criminal act bearing on his trustworthiness and his fitness to practice law. He claims that he was not practicing law when the evidence was to the contrary, and there was no basis on which he could have justified his conduct. In addition, in the other case before us, Shryock violated MRPC 5.5(b)(2), 8.1(b), and 8.4(a). His violation of Rule 8.1(b) involved his failure to cooperate with Bar Counsel's investigation of his misuse of his attorney escrow account. This factor further supports our conclusion that Shryock should be disbarred. Accordingly, the Court, as the promulgator and guardian of the proper standards for the practice of law, must act decisively where, as in the instant case, a suspended lawyer continues to practice law in violation of the order of this Court. Thus, under the circumstances, the only reasonable sanction is disbarment.

**IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THIS COURT, INCLUDING THE COST OF TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761 FOR WHICH SUM JUDGMENT IS**

**128**

ENTERED IN FAVOR OF THE ATTORNEY GRIEV-
ANCE COMMISSION AGAINST CHARLES M.
SHRYOCK, III.