31 A.3d 467

## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

## Peter Richard MAIGNAN.

Misc. Docket AG No. 23, Sept. Term, 2010.

Court of Appeals of Maryland.

Oct. 28, 2011.

Glenn M. Grossman, Bar Counsel, Atty. Grievance Commission of Maryland, for petitioner.

No argument on behalf of respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, *MURPHY, ADKINS, BARBERA, JJ.

BATTAGLIA, J.

Peter Richard Maignan, Respondent, was admitted to the Bar of this State on December 13, 1995 and was suspended indefinitely from the practice of law on December 22, 2005. *Attorney Grievance v. Maignan,* 390 Md. 287, 888 A.2d 344 (2005) (*Maignan I* ). On November 8, 2007, we again determined that Maignan had violated the Maryland Rules of Professional Conduct ("Rules") and continued his indefinite

---

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

suspension. *Attorney Grievance v. Maignan,* 402 Md. 39, 935 A.2d 409 (2007) (*Maignan II* ).

On July 28, 2010, the Attorney Grievance Commission ("Petitioner" or "Bar Counsel"), acting pursuant to Maryland Rule 16–751,[1] filed a "Petition for Disciplinary or Remedial Act" against Maignan, charging numerous violations of the Maryland Rules of Professional Conduct, including Rule 1.5 (Fees),[2] Rule 5.5 (Unauthorized Practice of Law),[3] and Rule 8.4(a), (b), (c), and (d) (Misconduct).[4] According to the Petition, Maignan engaged in the unauthorized practice of law during 2007 through March 2009, when he advised, counseled, and drafted documents and pleadings for complainant Jeffrey G. Smith and received at least $5,100 in legal fees from Mr. Smith. In

1.  Rule 16–751 provides in relevant part:
    (a) **Commencement of disciplinary or remedial action.**
    (1) Upon approval or direction of Commission. Upon approval or direction of the [Attorney Grievance] Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2.  Rule 1.5 provides in relevant part:
    (a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.

3.  Rule 5.5 provides in relevant part:
    (a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction. . . .
    (b) A lawyer who is not admitted to practice in this jurisdiction shall not:
    (1) except as authorized by these Rules or other law, establish an office or other systematic and continuous presence in this jurisdiction for the practice of law; or
    (2) hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction.

4.  Rule 8.4 provides in relevant part:
    It is professional misconduct for a lawyer to:
    (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct ... or do so through the acts of another;
    (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
    (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
    (d) engage in conduct that is prejudicial to the administration of justice;

an Order dated July 29, 2010, this Court referred the matter to Judge Albert Willis Northrop of the Circuit Court for Prince George's County for hearing, pursuant to Rule 16–757.[5]

On November 3, 2010, Maignan was personally served with process, to which was appended the Petition filed by Bar Counsel, Interrogatories, and Bar Counsel's Request for Admission of Fact and Genuineness of Documents. Maignan did not respond, and Judge Northrop entered an Order of Default on December 14, 2010.[6]

---

**5.** Rule 16–757 provides:

(a) **Generally.** The hearing of a disciplinary or remedial action is governed by the rules of evidence and procedure applicable to a court trial in a civil action tried in a circuit court. Unless extended by the Court of Appeals, the hearing shall be completed within 120 days after service on the respondent of the order designating a judge. Before the conclusion of the hearing, the judge may permit any complainant to testify, subject to cross-examination, regarding the effect of the alleged misconduct. A respondent attorney may offer, or the judge may inquire regarding, evidence otherwise admissible of any remedial action undertaken relevant to the allegations. Bar Counsel may respond to any evidence of remedial action.

(b) **Burdens of proof.** The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.

(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.

(d) **Transcript.** The petitioner shall cause a transcript of the hearing to be prepared and included in the record.

(e) **Transmittal of record.** Unless a different time is ordered by the Court of Appeals, the clerk shall transmit the record to the Court of Appeals within 15 days after the statement of findings and conclusions is filed.

**6.** Apparently, Maignan attempted to file an answer to Bar Counsel's Petition on January 4, 2011. In a memorandum dated January 20, 2011, Judge Michael R. Pearson of the Circuit Court for Prince George's County refused to accept Maignan's answer because it failed

At a hearing on February 4, 2011, Bar Counsel introduced the Admissions of Fact and the documents underlying the complaint, and the complainant, Mr. Smith, testified. Maignan did appear at the hearing and was permitted to cross-examine Mr. Smith and testify on his own behalf.

In an Opinion and Order dated February 24, 2011, Judge Northrop issued the following findings of fact and conclusions of law:

### FINDINGS OF FACT

\* \* \*

The Respondent has been suspended from the practice of law since December 22, 2005. On January 29, 2007, Jeffrey Smith, on behalf of Smith–Myers Mortgage Group of which he is a principal, entered into a Client Representation and Fee Agreement, ostensibly with the Law Offices of Herbert A. Callihan, LLC. That agreement, Petitioner's Exhibit 1, sub-exhibit 3, states that the firm will represent Mr. Smith's company in a civil action, *Sherrill, et al. v. Lawson, et al.,* a Circuit Court case in Prince Georges County. Mr. Smith's firm had been named as a defendant in that case. The agreement contains the following recital (reproduced *verbatim* ):

a) Client is free to engaged HAC, and that Client is not at this time obligated or has employed by any other Lawyer and HAC has obtained the services of **PETER R. MAIGNAN** and/or his associates to be in the Court for all proceedings; . . .

Mr. Smith testified, and this court accepts as true, that he never met Callihan; that the only contact he had with the Callihan firm was with the Respondent; that the contacts with the Respondent were at Mr. Smith's office where Mr. Smith's legal problems were discussed; and that he understood, because of the representations made by the Respon-

---

to comply with Maryland Rule 2–323(a) and was untimely under Maryland Rule 2–321.

dent, that the Respondent was his (i.e., his company's) lawyer. On January 29, 2007, Mr. Smith gave the Respondent a check for $8,000 (Petitioner's Exhibit 1, sub-exhibit 2.) Those funds were the attorney's fees set forth in the agreement. While the agreement originally called for a $15,000 fixed and earned fee, Mr. Smith balked at paying the fee and he and the Respondent agreed that the fee should be $8,000. That change is reflected in the agreement. The check was made out to the Respondent and only he endorsed it. Petitioner's Exhibit 1, sub-exhibit 2. The Respondent thereby took a legal fee for the work set forth in the agreement.

In June 2008 through March 2009, the Respondent provided legal representation to Mr. Smith and to other defendants in a case filed in the United States District Court for the District of Columbia, a court in which the Respondent was not authorized to practice. In the case of *Robert Carroll, et al. v. Fremont Investment, et al.,* Case No. 1:08–cv–00900 (HHK), the Respondent drafted and filed Defendant Jeffrey Smith's Answer to Complaint (Petitioner's Exhibit 1, sub-exhibit 4), Defendant Jeffrey Smith's Motion to Dismiss Amenmded [*sic*] Complaint or in the Alternative for Summary Judgment (Petitioner's Exhibit 1, sub-exhibit 5) and a Memorandum in support of the Motion (Petitioner's Exhibit 6). Each of these pleadings were styled as *pro se,* ostensibly signed by Mr. Smith. The Respondent, however, drafted, signed the pleadings in Mr. Smith's name and filed them in court. Petitioner's Exhibit 1, Admissions B 11, 12, 13, Testimony of Jeffrey Smith.

Mr. Smith testified that a default judgment was entered against his interests in the *Sherrill* case and he was concerned about Respondent's apparent lack of attention which may have been cause of that outcome. The Respondent's e-mail of March 30, 2009, ask Mr. Smith to e-mail him the case number of that case where the judgment was improperly issued against you *so that I can file the motion to vacate.* Petitioner's Exhibit 1, sub-exhibit 8 (emphasis added). Mr. Smith and the Respondent had additional e-mail

correspondence between January 1 and January 5, 2009, as is set forth in Petitioner's Exhibit 1, sub-exhibit 7. In his e-mail of January 1, 2009, the Respondent discusses the fact that he had not received Mr. Smith's e-mail concerning opposing counsel's communication with Mr. Smith. He asked Mr. Smith to send it to me as soon as possible *so that I can prepare your response.* Petitioner's Exhibit 1, sub-exhibit 7 (emphasis added). Admission B 14, Testimony of Jeffrey Smith. At one point, after no one appeared in court to represent Mr. Smith, he made an inquiry of the Respondent about the failure. The Respondent replied, "Everything is under control". Testimony of Jeffrey Smith. The Respondent's communications with Mr. Smith demonstrate that he was acting as an attorney; giving counsel, drafting documents to be filed in court and holding himself out as able to practice. The e-mails from the Respondent have no other party's name and the checks, in evidence, written to the Respondent, are all made payable to him individually. (The check dated January 4, 2008, for $650.00 contains a memorandum that says attorney.) Each of the six (6) checks in Petitioner's Exhibit 1, sub-exhibit 1, are for legal fees and they total $5,150.00. Admission B 6, 7, 8. These were in addition to the $8,000.00 legal fee discussed *supra.*

Although there came a time when the Respondent told Mr. Smith that he had been suspended, he did so in a manner that did not give Mr. Smith the essence of the problem and did not alert Mr. Smith to his status at the commencement of the engagement in 2007. Instead, he gave the impression that with three letters of recommendation, one of which was Mr. Smith's, his readmission would be approved. The Respondent wrote the letter and it was signed by Mr. Smith at Respondent's request. Petitioner's Exhibit 2, Testimony of Jeffrey Smith. Subsequent to that letter in May 2008, the Respondent continued to act as Mr. Smith's lawyer and no further discussion of the Respondent's status took place.

### CONCLUSIONS OF LAW

The Respondent violated Rules 1.5(a), 5.5(a) and (b), 8.4(a), (b), (c) and (d) of the Maryland Rules of Professional Conduct. The Respondent's fees were unreasonable as he was not authorized to receive legal fees. Mr. Smith paid for the services of a lawyer, i.e., one licenced to practice. The Respondent's deceit in connection with his entitlement to legal fees is a compelling reason to determine violations of both this Rule and Rule 8.4(c).

The Respondent, while suspended, engaged in the unauthorized practice of law. Section 10–101(h) of the Business Occupations and Professions Article of the Maryland Code defines the practice of law, *inter alia,* as to engage in giving legal advice . . . preparing or helping in the preparation of any . . . document that is filed in a court or affects a case that is or may be filed in a court . . . giving advice about a case that is or may be filed in a court. The evidence demonstrates that the Respondent engaged in these activities in his relationship with Mr. Smith. The Court of Appeals has said that the practice of law includes utilizing legal education, training and experience [to apply] the special analysis of the profession to a client's problem. *Attorney Grievance Comm'n v. James,* 340 Md. 318, 324, 666 A.2d 1246, 1248 (1995) citing *Kennedy v. Bar Ass'n of Montgomery County, Inc.,* 316 Md. 646, 662, 561 A.2d 200, 208 (1989). The Respondent, under any definition, held himself out as able to practice and he did practice law while he was suspended. The evidence of a violation of Rule 5.5(a) and (b) is overwhelming.

The Respondent's deceit in failing to honestly inform Mr. Smith and others that he was not permitted to practice law violated Rule 8.4(c) and receipt of fees for his services without such disclosures is dishonest as well. His conduct in representing Mr. Smith was prejudicial to the administration of justice and he thereby violated Rule 8.4(d).

The Respondent's violations of the Rules set forth *supra* lead to the conclusion that he violated Rule 8.4(a). The Respondent was permitted to testify on a limited basis at the hearing in this matter in mitigation. He offers that he

took general remedial classes in the District of Columbia and in Maryland during his suspension. He also notes that he was in the midst of a divorce. This court finds the Respondent did not credibly demonstrate that any of his actions were mitigated particularly in light of his assertion that he only worked "with" attorneys and did not practice law, an assertion clearly outweighed by the evidence.

It is for the Court of Appeals to decide the appropriate sanction in this case. Given the fact that, in Bar Counsel's Complaint, the Respondent was already suspended, this court has difficulty in finding any mitigating factor.

Bar Counsel has not filed any exceptions to the hearing judge's Opinion and Order and recommends disbarment. Maignan also has not filed any exceptions; he failed to appear at oral argument before this Court.

After oral argument, a per curiam order disbarring Respondent was entered on September 26, 2011. The order stated:

For reasons to be stated in an opinion later to be filed, it is this 26th day of September, 2011,

ORDERED, by the Court of Appeals of Maryland, that the Respondent, Peter Richard Maignan be, and he is hereby, disbarred, effective immediately, from the practice of law in this State and his name as an attorney has been stricken from the register of attorneys in this Court (Maryland Rule 16–713). Respondent shall pay all costs as taxed by the Clerk of this Court, including the costs of all transcripts, pursuant to Maryland Rule 16–761 for which sum judgment is entered in favor of the Attorney Grievance Commission of Maryland against Peter Richard Maignan.

Accordingly, we now state the reasons for our previously-issued order.

**Standard of Review**

This Court has "original and complete jurisdiction over attorney discipline proceedings in Maryland." *Attorney Grievance v. Nwadike*, 416 Md. 180, 192, 6 A.3d 287, 294 (2010), quoting *Attorney Grievance v. Thomas*, 409 Md. 121,

147, 973 A.2d 185, 200 (2009). While we conduct an independent review of the record, we "accept the hearing judge's findings of fact as prima facie correct unless shown to be clearly erroneous." *Attorney Grievance v. Stern,* 419 Md. 525, 556, 19 A.3d 904, 925 (2011), citing *Attorney Grievance v. Palmer,* 417 Md. 185, 205, 9 A.3d 37, 49 (2010). Pursuant to Maryland Rule 16–759,[7] we may treat the findings of fact as established for the purpose of determining the appropriate sanction, where no exceptions have been filed, and independently review the hearing judge's conclusions of law. *Stern,* 419 Md. at 556, 19 A.3d at 925.

### Discussion

We accept Judge Northrop's findings of fact as established for the purpose of determining the appropriate sanction, pursuant to Maryland Rule 16–759(b)(2)(A), because no exceptions have been filed.

As to the conclusions of law, we agree that the findings of fact clearly establish Maignan's violations of Rules 1.5(a), 5.5(a) and (b), and 8.4(a) through (d). As to Rule 1.5(a), which prohibits the collection of an unreasonable fee, Maignan negotiated and collected a fee from Mr. Smith for legal services while Maignan was suspended from the practice of law. An attorney's suspension from the practice of law renders a legal fee paid by a client unreasonable. *See Attorney Grievance v. Fallin,* 371 Md. 237, 241–42, 808 A.2d 791, 794 (2002); *see also Attorney Grievance v. Velasquez,* 380 Md. 651, 656, 846 A.2d 422, 425 (2004) ("Combining the respondent's lack of a license to practice law ... with his failure to render any meaningful services in connection with the representation he had undertaken and noting the respondent's collection and

---

7. Maryland Rule 16–759 provides in pertinent part:

(b) **Review by Court of Appeals.** (1) Conclusions of law. The court of Appeals shall review de novo the circuit court judge's conclusions of law.

(2) Findings of fact. (A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.

retention of a fee, the hearing judge found a violation of Rule 1.5(a).").

With respect to Rule 5.5(a), to determine the unauthorized practice of law, "the focus of the inquiry should 'be on whether the activity in question required legal knowledge and skill in order to apply legal principles and precedent.' " *Attorney Grievance Comm'n v. Hallmon,* 343 Md. 390, 397, 681 A.2d 510, 514 (1996), quoting *In re Discipio,* 163 Ill.2d 515, 206 Ill.Dec. 654, 645 N.E.2d 906, 910 (1994). Although Mr. Smith's Client Representation and Fee Agreement ostensibly reflected the signature of Herbert A. Callihan of the Law Offices of Herbert A. Callihan, LLC, it was Maignan alone who addressed Mr. Smith's defense in the *Sherrill* case. Maignan alone met with Mr. Smith to address legal problems. When a default judgment was entered against Mr. Smith's interests in the *Sherrill* case, Maignan provided legal advice by offering to file a motion to vacate. Clearly, Maignan's exercise of legal knowledge, skills and education while suspended from the practice of law violated Rule 5.5(a).

Maignan's failure to inform Mr. Smith of his suspension from the practice of law prior to May 2008 also demonstrates a violation of Rule 5.5(a). From January 2007 through May 2008, Maignan performed legal services for Mr. Smith without any reference to the fact that he was indefinitely suspended. Just as we concluded in *Attorney Grievance v. Awuah,* 374 Md. 505, 523–24, 823 A.2d 651, 661–62 (2003), Maignan's failure to notify his client of the suspension serves as a ground for a violation of Rule 5.5(a).

In May 2008, when Maignan disclosed his suspension to Mr. Smith, he misrepresented that he could be reinstated upon the submission of letters of recommendation by Mr. Smith and two others. Maignan never told Mr. Smith that he continued to be suspended from the practice of law. Therefore, even after May 2008, Maignan violated Rule 5.5(a) because he continued to distort his inability to practice law. *See Awuah,* 374 Md. at 523–24, 823 A.2d at 661–62.

■ Maignan's misrepresentations of his ability to practice law also fall under the purview of Rule 5.5(b), prohibiting a suspended attorney from holding out to the public that he or she is able to practice law in Maryland. *See Attorney Grievance v. Shryock,* 408 Md. 105, 109, 125, 968 A.2d 593, 596, 605 (2009) (concluding that the continued use of attorney trust account, which identified Shryock as an attorney, following indefinite suspension violated Rule 5.5(b)(2)).

■ We also conclude that Maignan's conduct violated Rules 8.4(a) through (d). Under Rule 8.4(b), Maignan committed "a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer...." Section 10–601 of the Maryland Code (1989, 2004 Repl.Vol.), Business Occupations & Professionals Article criminalizes the unauthorized practice of law. *See also* Md.Code, Bus. Occ. & Prof. Art. § 10–606(a)(3) (1989, 2004 Rep. Vol.); *Shryock,* 408 Md. at 122–23, 968 A.2d at 603 (concluding that a lawyer's unauthorized practice of law while already suspended violated Rule 8.4(b)).

■ Maignan's representation of Mr. Smith also constituted "conduct involving dishonesty, fraud, deceit or misrepresentation" under Rule 8.4(c). Maignan accepted fees for legal work when he was not entitled to and misrepresented his status throughout his representation of Mr. Smith. *See Velasquez,* 380 Md. at 657, 846 A.2d at 426 (concluding that the respondent's practice of law without a license, failure to communicate that fact to his client, and acceptance of fees for legal work that he could not perform demonstrated conduct involving dishonesty, fraud, deceit or misrepresentation under Rule 8.4(c)); *Awuah,* 374 Md. at 523–24, 823 A.2d at 661–62; *see also Shryock,* 408 Md. at 124, 968 A.2d at 604 (concluding that Rule 8.4(c) was violated by a suspended attorney's filing of pleadings for another because "there was no reasonable basis on which Shryock could have thought that his conduct was lawful").

■ With regard to Rule 8.4(d), which defines professional misconduct as "engag[ing] in conduct that is prejudicial to the

administration of justice," it is axiomatic when it is discovered and made public that a person who represents by word and deed that he can practice law when in fact he is under the disability of an indefinite suspension erodes the public's confidence in the practice of law. *Awuah,* 374 Md. at 523–24, 823 A.2d at 662 (finding that a suspended attorney's failure to communicate to his clients his inability to practice law prejudiced the administration of justice under Rule 8.4(d)); *Shryock,* 408 Md. at 125, 968 A.2d at 604–05 (Violations of Rules 8.4(b) and (c) generally "constitute a violation of [Rule] 8.4(d), in that the conduct that supports a violation of [Rule] 8.4(b) and (c) amounts to conduct prejudicial to the administration of justice.").

We also have previously determined that multiple Rule violations, such as found here, may establish a violation of Rule 8.4(a). *Attorney Grievance v. Carithers,* 421 Md. 28, 57, 25 A.3d 181, 198 (2011).

**Sanction**

When disciplining an attorney, we have consistently observed that our primary goal is to protect the public. *See Stern,* 419 Md. at 559, 19 A.3d at 926. To effectuate that goal, we consider the following aggravating factors of Section 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution.

*Attorney Grievance v. Bleecker*, 414 Md. 147, 176–77, 994 A.2d 928, 945–46 (2010). Bar Counsel has urged us to consider Maignan's prior disciplinary offenses under factor (a).

With regard to factor (a), this is the third time in seven years that we have determined that Maignan violated the Rules of Professional Conduct. In 2005, Maignan was indefinitely suspended from the practice of law for a trust account violation when he deposited a client's settlement funds into his operating account. *Maignan I*, 390 Md. 287, at 296–98, 888 A.2d 344, 349–50. In 2007, we determined that Maignan, prior to his suspension in 2005, failed to deposit a retainer fee in his escrow account, and, following his suspension, engaged in the unauthorized practice of law for appearing in court and representing to the court that he could practice law in spite of his indefinite suspension. *Maignan II*, 402 Md. 39, 46–58, 935 A.2d 409, 413–20. In January of 2007, the same month that *Maignan II* complaints were filed with this Court, Mr. Smith had signed the Client Representation and Fee Agreement and Maignan had negotiated with Mr. Smith a legal fee of $8,000. After we entered our decision in *Maignan II* in November of 2007, Maignan continued to practice law and misrepresent his ability to practice law to Mr. Smith. Obviously, Maignan's prior disciplinary offenses, including the overlap in time between this Court's determination in *Maignan II* and the circumstances in the present case, warrant the gravest sanction of disbarment.

When a member of the legal profession consistently violates the Rules of Professional Conduct and continues to disregard repeated admonishments in derogation of the trust and confidence of the public, disbarment is the only remedy.

Accordingly, we have disbarred the respondent, Peter Richard Maignan.